In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3771

DANA KASKEL,

*Plaintiff-Appellant,*

*v.*

NORTHERN TRUST CO.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2421—**Charles R. Norgle, Sr.,** *Judge,*

ARGUED FEBRUARY 10, 2003—DECIDED MAY 5, 2003

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Dana Kaskel, a widow with five children, invested $250,000 of the proceeds of her late husband's life insurance policy with Martin, Livingston & Sterling, Ltd. in the form of a loan that MLS was to repay at the end of six weeks with interest at an annual rate of 8 percent. She wrote a check for $250,000 to MLS, and an agent of MLS named Forrester mailed the check to a Dr. Steven Shook. He was supposed to use it to obtain a $25 million loan from a company of which he was a principal and to invest the proceeds of the loan, generating profits in which MLS would share over and above the amount

necessary to repay Mrs. Kaskel's $250,000 loan with the agreed-upon interest. Shook deposited the check in his personal account at the Bank of America, which presented the check for payment to Northern Trust Company, that being the bank in which the insurance company had deposited the proceeds of Mr. Kaskel's life insurance policy in an account of which she was the beneficiary. Although MLS had not endorsed the check, Northern paid it and so the $250,000 went into Shook's account. We do not know what happened to the money and have only the vaguest impressions of MLS. We do not even know Forrester's role in the firm, though it is conceded that he was authorized to act on its behalf in the matter of the $250,000 loan. As permitted by the Uniform Commercial Code, Northern Trust did not return the check or a copy of it to Mrs. Kaskel, see UCC § 4-406(a), so it was not until much later that she discovered that the check had not been endorsed. Although her contract with the bank required her to report any discrepancies in her bank statement within 30 days, the statement did not reveal the fact that the bank had paid her check to an unauthorized person.

Mrs. Kaskel's loan to MLS has never been repaid, although over a period of slightly less than two years she did receive some $40,000 in dribs and drabs from Shook, MLS, and others associated with the transaction. MLS still exists, and it acknowledges the debt, but whether the remaining balance of the loan will ever be repaid, with or without the mounting interest due on it, is uncertain. In any event the loan is certainly in default. In an attempt to recover the unpaid balance, Mrs. Kaskel brought this diversity suit (which is governed by Illinois law)—but against Northern Trust rather than against MLS. When Northern paid $250,000 from Mrs. Kaskel's account to Shook, it violated the terms of its contract with her (more precisely, the contract between the bank and the insurance

company of which she was a third-party beneficiary), which authorized the bank to disburse money in her account only to a payee or endorsee of her check. Shook was neither, because MLS, the payee, had not endorsed the check. So the bank broke its contract with her, see, e.g., UCC § 4-401(a); *National Bank of Monticello v. Quinn*, 533 N.E.2d 846, 849 (Ill. 1988); *Continental Casualty Co. v. American Nat'l Bank & Trust Co.*, 768 N.E.2d 352, 358 (Ill. App. 2002); *Kosic v. Marine Midland Bank*, 430 N.Y.S.2d 175, 177 (App. Div. 1980), but the district court nevertheless granted summary judgment for the bank because she had failed to prove causation and anyway had ratified the transaction by later accepting part payments on the loan.

Mrs. Kaskel argues that had the bank refused to pay Shook he would not have gotten hold of her $250,000, and therefore the bank's violation of its contract with her was the cause, or more precisely a cause, of her loss. But the premise is incorrect. Had the bank refused to pay Shook it would have returned the check to him and he in turn would have returned it to Forrester for endorsement. Forrester would have endorsed the check to Shook (his authority to do so is not questioned) because he wanted Shook to be able to cash the check. Mrs. Kaskel would have been in exactly the same pickle that she is in today. Not having been harmed by the bank's breach of contract, she cannot recover damages (beyond nominal damages, which she does not seek) for the breach. *Sanwa Business Credit Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 617 N.E.2d 253, 260 (Ill. App. 1992); *Modern Equipment Corp. v. Northern Trust Co.*, 1 N.E.2d 105, 107 (Ill. App. 1936); *Ambassador Financial Services, Inc. v. Indiana Nat'l Bank*, 605 N.E.2d 746, 754 (Ind. 1992); *Hall v. Mid-Century Ins. Co.*, 811 P.2d 855, 858-59 (Kan. 1991); *Tonelli v. Chase Manhattan Bank, N.A.*, 363 N.E.2d 564, 567 (N.Y. 1977).

In any event, she ratified the transfer of the money from her bank account to Shook. For she accepted several partial payments on her loan after learning that her check had not been endorsed and that her contract with the bank had therefore been broken. No more is required for ratification under Illinois law. E.g., *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 808 (Ill. App. 1998); *Athanas v. City of Lake Forest*, 657 N.E.2d 1031, 1037 (Ill. App. 1995); *Reavy Grady & Crouch Realtors v. Hall*, 442 N.E.2d 307, 310-11 (Ill. App. 1982); *Kores v. Western Office Supply Co.*, 110 N.E.2d 461, 463 (Ill. App. 1953). If the other party to your contract breaks it, and instead of walking away from it you act as if it remains in force, it *does* remain in force. You cannot later repudiate it. That would be to play heads I win tails you lose, since you would take the benefit of the contract if it turned out well and walk away from it if it turned out badly, as may indeed have been the case here. *Sanwa Business Credit Corp. v. Continental Ill. Nat'l Bank & Trust Co., supra*, 617 N.E.2d at 253; *Freeport Journal-Standard Publishing Co. v. Frederic W. Ziv Co.*, 103 N.E.2d 153, 158 (Ill. App. 1952).

Although the partial payments did not all come from MLS, they all came from persons or entities that, as Mrs. Kaskel well knew, were involved in the transactions over her investment. By accepting the money without warning Northern Trust that it had violated its obligations to her by paying over the proceeds of her check to Shook, she gambled on her investment's turning out well after all. Maybe if alerted the bank could have taken steps to recover her $250,000 before it vanished down a sinkhole. One function served by the doctrine of ratification is to induce the victim of a breach of contract to notify the other party of the breach promptly so that that party can mitigate its damages. *Inn Foods, Inc. v. Equitable Co-Operative Bank*, 45 F.3d 594, 597-98 (1st Cir. 1995); *Northern Helex*

*Co. v. United States*, 455 F.2d 546, 555 (Ct. Cl. 1972); *United States Navigation Co. v. Black Diamond Lines, Inc.*, 124 F.2d 508, 510-11 (2d Cir. 1942); *United Parcel Service, Inc. v. World Time Corp. of America*, 556 So. 2d 1223, 1224 (Fla. App. 1990) (per curiam). Had Mrs. Kaskel notified the bank that it had violated its contract with her by paying the proceeds of the check to Shook, the bank might have been able to recover the money before it was dissipated. Cf. *Leather Mfrs' Nat'l Bank v. Morgan*, 117 U.S. 96, 114-16 (1886).

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*