# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-3875

AGNES N. CONDER, as trustee of the
Conder Living Trust, on behalf of
herself and all others similarly situated,

*Plaintiff-Appellant,*

*v.*

UNION PLANTERS BANK, N.A.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 01-0086-C-T/K—**John Daniel Tinder**, *Judge*.

ARGUED APRIL 13, 2004—DECIDED SEPTEMBER 14, 2004

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal from the dismissal of a diversity suit (governed by Indiana law) for failure to state a claim requires us to consider a bank's liability to victims of a Ponzi scheme for allowing checks made out to the malefactors to be deposited without proper endorsements. According to the complaint, which is our only source of

facts, Johann Smith and three other individuals used a number of corporations and other business entities controlled by them, collectively the "Heartland Financial Group," to extract money from the plaintiff and the members of her class on the promise that the money would be invested and yield a high rate of return. Instead of investing the money, Smith and his associates rebated some of it to the earliest investors as the promised high return on their investment (the signature move in a Ponzi scheme, designed both to delay discovery of the fraud and to attract additional investors) and used the rest to support an extravagant lifestyle. Before being shut down by the SEC the scheme had fleeced the investors of some $35 million.

The plaintiff made out numerous checks, one for as much as $150,000, to "Johann M. Smith Escrow Agent." Smith, or someone acting on his behalf, stamped each check

PAY TO THE ORDER OF

UNION PLANTERS BANK

FOR DEPOSIT ONLY

LINCOLN FIDELITY ESCROW ACCOUNT

074014213 0001266190

The number at the bottom is not Smith's, the payee's, bank account number (anyway his account is in another bank), but that of Lincoln Fidelity, one of the Heartland entities; thus the check was not endorsed by the payee. Nevertheless, Union Planters Bank, the defendant, accepted each of the checks for deposit in Lincoln Fidelity's escrow account in the bank. The money was transferred to that account from the plaintiff's bank account when Union Planters Bank presented the plaintiff's check to her bank for payment, and was then checked out from Lincoln Fidelity's account to various of the schemers.

The plaintiff's theories of the bank's liability are two: conversion and negligence, and we begin with the former. Obviously an endorsement signed not by the payee but instead by the person to whom the check is endorsed is ineffective to transfer rights over the check from the payee to the endorsee and thus to the bank in which the endorsee deposits the check. UCC § 3-201(b). So Union Planters Bank was not a holder in due course of the money when it arrived and was deposited in the bank, *id.*, § 3-302(a); *Hartford Fire Ins. Co. v. Maryland Nat'l Bank, N.A.*, 671 A.2d 22, 26-27 (Md. 1996); *FDIC v. Marine Nat'l Bank of Jacksonville*, 431 F.2d 341, 344 (5th Cir. 1970), and therefore, the plaintiff argues, the bank stood in the shoes of Lincoln Fidelity (part of Heartland, the Ponzi enterprise, remember) and has the same liability to the plaintiff as Lincoln Fidelity would have. Since she could have sued Lincoln Fidelity for conversion, she can, she argues, sue Union Planters Bank for conversion. Section 3-306 of the Uniform Commercial Code provides that "a person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds." The transferee of a negotiable instrument who is not a holder in due course is simply the assignee of a contract and has no greater rights than any other assignee. UCC §§ 3-305(a), 3-306; *Southern Surety Co. v. Merchants' & Farmers' Bank of Avilla*, 176 N.E. 846, 852 (Ind. 1931); *Brown v. Indiana National Bank*, 476 N.E.2d 888, 894 (Ind. App. 1985); *In re Doctor's Hospital of Hyde Park, Inc.*, 337 F.3d 951, 956-57 (7th Cir. 2003); *National City Bank, Northwest v. Columbian Mutual Life Ins. Co.*, 282 F.3d 407, 409 (6th Cir. 2002). A thief cannot convey a good title, by assignment or otherwise. *Curme, Dunn & Co. v. Rauh*, 100 Ind. 247 (1885). So the Ponzi schemers, by depositing Conder's check in Union Planters Bank, could not convey good title to the bank.

Or so it might seem; but in fact this hallowed principle of property law is no longer applied in cases in which a transfer of money is effected by negotiation of an instrument rather than by physical conveyance, even if as in this case the recipient (the bank) is not a holder in due course. UCC § 3-420(a); compare *Douglass v. Wones*, 458 N.E.2d 514 (Ill. App. 1983). The Uniform Commercial Code, as revised in 1990 to wipe out some earlier cases, including one from Indiana, *Insurance Co. of North America v. Purdue Nat'l Bank*, 401 N.E.2d 708, 714 (Ind. App. 1980); see UCC § 3-417 comment 2; *Cassello v. Allegiant Bank*, 288 F.3d 339, 341 (8th Cir. 2002), is explicit that a drawer (the plaintiff in this case) cannot sue the depositary bank (the defendant, Union Planters Bank) for conversion. UCC § 3-420(a)(i) and comment 1; 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 18-4 (4th ed. 1995 & Supp. 2004). As the UCC comment explains, the plaintiff has an adequate remedy by way of suit against her own bank, the bank that paid the check even though it wasn't properly endorsed. We haven't been told whether the plaintiff has sued her own bank as well as Lincoln Fidelity's bank. As we'll see, such a suit might fail for want of proof of causation; but a remedy is not inadequate merely because it does not yield the plaintiff a windfall.

The plaintiff's alternative theory is that Union Planters Bank violated a duty of care to her in allowing her improperly endorsed checks to be deposited in Lincoln Fidelity's account. In other words, she is accusing the bank of having negligently failed to prevent the Ponzi schemers from defrauding her. As we noted recently in *Travelers Casualty & Surety Co. v. Wells Fargo Bank N.A.*, 374 F.3d 521, 527 (7th Cir. 2004), although the common law generally refuses to fasten liability on someone who fails to be a "good Samaritan," among the numerous exceptions is the rule (a common law rule, not a UCC rule, but coexisting with the UCC) that a

bank which allows a person to deposit a check made payable not to him but to the bank (to which the drawer owes no money) in his own account is liable to the drawer if it fails to make a reasonable effort to determine whether the drawer really meant to authorize so suspect a transaction. The rule isn't applicable to this case, and, given the enormous volume of check traffic moving through banks and the remedies that a drawer has against his own bank should that bank pay out the drawer's money in violation of its contractual and UCC duties, we doubt that Indiana is about to expand the rule into a general duty of care— especially in the face of the many cases that refuse in other settings to impose on banks a general duty of care toward persons who are not their customers and to whom therefore they have no contractual obligations. E.g., *Frost Nat'l Bank v. Midwest Autohaus, Inc.*, 241 F.3d 862, 873-74 (7th Cir. 2001); *Bell Brothers v. Bank One, Lafayette, N.A.*, 116 F.3d 1158, 1160 (7th Cir. 1997); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225-27 (4th Cir. 2002).

Even if Indiana imposed such a duty of care, this suit would fail for several reasons, including a lack of a showing of negligence. There was nothing to arouse the suspicions of Union Planters Bank when it was instructed to deposit improperly endorsed checks in Lincoln Fidelity's account. Improper endorsements are common enough, and usually innocent. Depositary banks can be holders in due course of unendorsed checks if the payee is its customer, UCC § 4-205(1); *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1554-56 (9th Cir. 1996), while the "intended payee" rule, as we shall see, provides a safe harbor for banks that honor unendorsed or improperly endorsed checks.

There is a little more in the way of suspicious circumstances here because remember that the plaintiff's checks were deposited in Lincoln Fidelity's *escrow* account. The

plaintiff argues that the checks that the malefactors wrote on the account should have alerted the bank that the money in the account was being used for purposes that would not be legitimate for an escrow agent. Statutes impose various monitoring duties on banks, such as the duty to report large currency transactions, and depositors who are on terrorist watch lists, 31 U.S.C. §§ 5313(a), 5318(*l*), but excuse banks from knowing the terms of its escrow accounts. Ind. Code §§ 30-2-4-5, -6, -7, -9; *Kesselman v. National Bank of Arizona*, 937 P.2d 341, 346 (Ariz. App. 1996); Henry J. Bailey & Richard B. Hagedorn, *Brady on Bank Checks: The Law of Bank Checks* § 13.14[1] (rev. ed. 2004); cf. *Bell Brothers v. Bank One, Lafayette, N.A., supra*, 116 F.3d at 1160. Tasking banks to read every check to make sure that the payee's identity was consistent with the character of the account would impose an unreasonable burden, and so the failure to perform the task would not be negligence even if banks did have a general duty of care to noncustomers (which, to repeat, they do not).

Our recent decision in *Kaskel v. Northern Trust Co.*, 328 F.3d 358 (7th Cir. 2003), provides still another defense to the bank. Mrs. Kaskel had written a check to a company called MLS, which had agreed to invest the money for her. MLS mailed the check, without however endorsing it, to a Dr. Shook, who was to make the actual investment. Shook deposited the check in his personal account, and his bank presented it for payment to the Northern Trust Company, the bank on which Kaskel's check had been drawn. Northern Trust paid despite the absence of an endorsement, with the result that Kaskel's money ended up in Shook's account, from which it subsequently disappeared. Kaskel sued Northern Trust, claiming that it had broken its contract with her, UCC § 4-401(a), because the contract authorized the bank to disburse money in her account only to a payee or endorsee of her checks, and Shook was neither. We held, so

far as bears on the present case, that while there was indeed a breach of contract, Mrs. Kaskel was not entitled to more than nominal damages because there was no causal relation between the breach and the loss of her money. For had the bank noticed that the check was not endorsed, and therefore returned it to MLS, MLS would have endorsed it to Shook, Shook would have redeposited the check, this time Northern Trust would have paid, and so Kaskel would still have lost her money. 328 F.3d at 360; see also *Isaac v. American Heritage Bank & Trust Co.*, 675 P.2d 742, 744-47 (Colo. 1984); *Richards v. Seattle Metropolitan Credit Union*, 68 P.3d 1109, 1112-14 (Wash. App. 2003); *Rizo v. U-Lane-O Credit Union*, 37 P.3d 220, 221-22 (Ore. App. 2001); *Sanwa Business Credit Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 617 N.E.2d 253, 258-60 (Ill. App. 1993).

Likewise had Union Planters Bank noticed the improper endorsement, it would have returned the check to Johann Smith, he would have endorsed it to Lincoln Fidelity, the check would have been redeposited with the bank, and the bank would have credited Lincoln Fidelity's account with the amount of the check. So the plaintiff would have lost her money all the same, and is therefore no worse off because of the bank's mistake. She faults the district court for "absolving [the bank] of any accountability for looking the other way and neglecting its duties under the UCC while millions of dollars of stolen funds passed through its hands," but fails to see that the same millions of dollars would have passed through the bank's hands, with a delay of only a few days, had the bank returned the checks either to Smith or to her.

Imposing liability on someone who hasn't actually caused a harm (because the harm would have occurred anyway) creates incentives to take excessive, and therefore socially wasteful, precautions, *Movitz v. First Nat'l Bank of Chicago*, 148 F.3d 760, 762-63 (7th Cir. 1998); A. Mitchell Polinsky &

Steven Shavell, "Punitive Damages: An Economic Analysis,"
111 *Harv. L. Rev.* 869, 878-87 (1998), with the effect of im-
peding commerce. *Bonded Financial Services, Inc. v. European
American Bank*, 838 F.2d 890, 892-93 (7th Cir. 1988); *Western
State Bank v. First Union Bank & Trust Co.*, 360 N.E.2d 254,
258 (Ind. App. 1977). Hence the "intended payee" rule, rec-
ognized in Indiana as elsewhere, e.g., *Ambassador Financial
Services, Inc. v. Indiana National Bank*, 605 N.E.2d 746 (Ind.
1992); *Hall v. Mid-Century Ins. Co.*, 811 P.2d 855, 858-59 (Kan.
1991); *Perini Corp. v. First Nat'l Bank*, 553 F.2d 398, 412-14
(5th Cir. 1977), and a further obstacle to Conder's claim,
unless the rule is considered, as probably it should be, as
just a restatement of the general tort requirement of proving
a causal relation between the tortious conduct and the
plaintiff's injury.

The rule provides that if a bank transfers a check without
a proper endorsement but the transfer is to a person whom
the drawer of the check wanted (or would if consulted have
wanted) to have the money, the bank is not liable for any
loss the drawer may have suffered as a result of the transfer,
since the transfer would have gone through even if the bank
had insisted that the check be properly endorsed. The
plaintiff's criticism of the application of the rule to the facts
of *Franklin v. Benock*, 722 N.E.2d 874 (Ind. App. 2000), may
be well founded, but the rule itself is sound; there is no
liability in tort if the victim would have suffered the loss of
which he is complaining even if the defendant had not
violated its legal duty.

The principle is equally applicable to a suit for fraud or
conversion—the plaintiff's other claim, with which we
began. She argues that requiring proof of a causal relation
between the defendant's conduct and the plaintiff's loss is
strictly an aspect of tort law and section 3-306 is a rule of
property law. That is doubly wrong: *Kaskel* was a contract

case, not a tort case; and all that section 3-306 does is, by lifting the holder in due course defense, to open the way to a tort suit. See UCC § 3-307 comment 2; *Mutual Service Casualty Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 620-21 (7th Cir. 2001); *Chosnek v. Rolley*, 688 N.E.2d 202 (Ind. App. 1997). It removes a defense, rather than altering the claim, and the claim is governed by the principles of tort law, which require proof of causation. As a final detail, we correct the plaintiff's contention that a suit against an assignee is based on different principles from a suit against the assignor: if you are defrauded by the assignor and sue him, that is a suit for fraud, and hence a tort suit; if instead you sue the assignee, that is still a suit for fraud and hence still a tort suit. UCC § 3-307 comment 2; see, e.g., *Douglass v. Wones, supra*.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*