FOURTH DIVISION

September 1, 2005

No. 1-04-0151

DENNIS ADDISON, KAREN ADDISON, JAMES ALBERTS, )   Appeal from the

JAMES ALLEN, KATHLEEN CASHMAN, MICHAEL )   Circuit Court of

CASHMAN, ALYCE DALTO, JANICE FLEURY, DOLORES )   Cook County.

GACKI, ARNOLD  GACKI, DANIEL GOMEZ, IRENE )

GOMEZ, ROBERT HARRISON, KATHLEEN HARRISON, )

MICHAEL JOHNSON, BONNIE JOHNSON, JOHN )

KOSTOVICH, CAROL KOSTOVICH, MICHAEL )

MATKOVICH, BETTY MATKOVICH, ALAN MAY, )

BOBETTE MAY, JIMMY McCOLGAN, CORBY NEUMANN, )

STEVEN PEDLOW, WILLIAM SILK, LINDA SILK, and )   No. 02 CH 3149

KAREN VAICAITIS, )

)

Plaintiffs-Appellants, )

)

v. )

)

DISTINCTIVE HOMES, LTD., BRYAN NOONER, )   

MGM DEVELOPMENT, INC., and JACK MAYHER, )   Honorable

)   Donald J. O’Brien, Jr.,

Defendants-Appellees. )   Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs appeal from the circuit court’s dismissal of their second amended complaint for common law and statutory fraud.  For the reasons that follow, we affirm.

Plaintiffs are all owners of residences in the Preserve at Marley Creek subdevelopment (Preserve) in Orland Park.  Defendant MGM Development, Inc. (MGM), initially developed the Preserve and constructed several single-family homes there.  Defendant Jack Mayher is the principal owner and executive officer of MGM.  Defendant Distinctive Homes, Ltd. (Distinctive), constructed several condominiums in the Preserve.  Defendant Bryan Nooner serves as chairman of Distinctive.  

Plaintiffs filed their initial complaint, as a putative class action, against defendants in February 2002, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 
et seq. 
(West 2002)) and common law fraud.  Plaintiffs alleged that, from 1997 to 2000, defendants had represented to buyers and prospective buyers that a golf course would be constructed on property adjacent to the Preserve and priced the homes and units in the subdevelopment on that basis.  In 2000, the property was rezoned for industrial purposes.  Plaintiffs contended that defendants had abandoned plans to construct the golf course as early as 1996, but continued to represent that one would be built there as recently as 2000, and thereby incurred substantial unjust profits.

Defendant Mayher filed a motion to dismiss plaintiffs’ complaint, alleging that plaintiffs had failed to allege specifically that Mayher had made any representations as to plans for the construction of a golf course at the Preserve.  The circuit court granted the motion and allowed plaintiffs leave to file an amended complaint.  The court also stayed plaintiffs’ discovery requests as to Mayher.

Plaintiffs filed their amended complaint in October 2002, alleging essentially the same counts in their initial complaint, and attaching several exhibits of what they purported to be defendants’ representations of plans for a golf course adjacent to the Preserve, including maps of the subdevelopment and advertisements and items in local newspapers.  Plaintiffs also filed a motion for class certification, and a motion to compel answers to discovery as to MGM, Distinctive, and Nooner.  Mayher renewed his motion to dismiss, which the circuit court continued pending plaintiffs’ response.  The court granted plaintiffs’ motion to compel and continued their motion for class certification. 

The circuit court later denied Mayher’s motion to dismiss and granted Mayher 28 days to comply with plaintiffs’ discovery requests.  Plaintiffs filed new motions to compel defendants to produce tax records, which they argued were indicative of the inflated value of all properties in the Preserve due to defendants’ representations.  The trial court denied the motion, but allowed plaintiffs to seek discovery of tax records pertaining to their own properties.

Mayher filed another motion to dismiss plaintiffs’ amended complaint and sought sanctions, arguing that the Village of Orland Park Plan Commission minutes yielded in discovery contradicted plaintiffs’ allegations as to Mayher’s representations concerning the proposed construction of a golf course adjacent to the Preserve.  Mayher also sought sanctions for failure to conduct a reasonable inquiry as to whether Mayher made the statements plaintiffs alleged in their complaint.  The trial court continued the motion and granted plaintiffs leave to file a second amended complaint.

Plaintiffs’ second amended complaint alleged several specific instances spanning from 1997 to 1999 in which defendants made specific representations to plaintiffs that there were plans to build a golf course adjacent to the Preserve while defendants were aware that plans for the golf course had in fact been abandoned in 1996.  Plaintiffs alleged claims sounding in consumer fraud, common law fraud, and unjust enrichment.

Mayher and MGM filed another motion to dismiss, arguing that plaintiffs’ allegation that they had abandoned plans to construct the golf course was conclusory and was insufficient to support a claim of knowing deception.  Nooner and Distinctive adopted the motion.  In a memorandum opinion, the circuit court granted the motion and dismissed plaintiffs’ counts of consumer and common law fraud with prejudice, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2002)), finding that plaintiffs had failed to plead sufficient facts to allege that Mayher and MGM had abandoned plans to construct the golf course but continued to represent that planning for the golf course persisted.

Plaintiffs filed a motion to reconsider, which the circuit court denied, finding no just reason to delay enforcement or appeal of the court’s dismissal of the fraud claims, pursuant to Supreme Court Rule 304(a).  155 Ill. 2d R. 304(a).

On appeal, plaintiffs contend that the circuit court erred in dismissing their claims for common law fraud and consumer fraud where it employed an erroneous pleading standard in granting the motion to dismiss and that the court erred in not allowing plaintiffs to replead the claims.

This court reviews the grant of a section 2-615 motion to dismiss 
de novo
, and we accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party.  
Krueger v. Lewis
, 342 Ill. App. 3d 467, 470 (2003).  We will uphold the dismissal of a complaint when it clearly appears that no set of facts could be proved under the pleadings that would entitle the plaintiff to relief.  
Krueger
, 342 Ill. App. 3d at 470.  The plaintiff is not required to set out his or her evidence, but only allege the ultimate facts to be proved.  
Krueger
, 342 Ill. App. 3d at 470.  However, we will disregard mere conclusions of law or fact unsupported by specific factual allegations.  
Lipinksi v. Martin J. Kelly Oldsmobile, Inc.
, 325 Ill. App. 3d 1139, 1144 (2001).  

In order to plead a cause of action for common law fraud, a plaintiff must allege: (1) a false statement of material fact by the defendant; (2) the defendant’s knowledge that the statement was false; (3) the defendant’s intent that the statement induce the plaintiff to act; (4) the plaintiff’s reliance on the truth of the statement; and (5) damages resulting from the plaintiff’s reliance on the statement.  
Connick v. Suzuki Motor Co., Ltd.
, 174 Ill. 2d 482, 496 (1996).   A complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what representations were made, who made them, and to whom.  
Connick
, 174 Ill. 2d at 496-97.  

In order to state a cause of action under the Consumer Fraud Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant; (2) the defendant’s intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 492 (1999).  An omission or concealment of a material fact in the conduct of trade or commerce constitutes a deceptive act.  815 ILCS 505/2 (West 2002).  A material fact is one which a buyer would be expected to rely on in deciding whether to make a particular  purchase.  
Connick
, 174 Ill. 2d at 505.  Where a plaintiff claims consumer fraud on the premise that the defendant concealed or omitted material facts from potential buyers with the intent that the buyers rely on such a concealment or omission, a plaintiff must allege that the fact omitted or concealed was known to the defendant at the time of concealment.  
Miller v. William Chevrolet/Geo, Inc.
, 326 Ill. App. 3d 642, 658 (2001).  Furthermore, a valid claim must show that the concealment or omission proximately caused the plaintiff’s injury.  
Connick
, 174 Ill. 2d at 501.  

Here, the circuit court dismissed counts I and II of plaintiffs’ second amended complaint on the basis that the exhibits attached failed to support the allegation that defendants had abandoned plans to construct a golf course adjacent to the Preserve in 1996 but continued to hold out that plans for its development were still underway when plaintiffs bought their properties between 1997 and 2000.  The exhibits cited by plaintiffs – the transcribed minutes from an Orland Park Plan Commission meeting in May 2000, a newspaper article from March 2001, and Orland Park Mayor Dan McLaughlin’s deposition – all indicated that plans for the golf course had been abandoned by the developers, but there was no indication as to exactly when that occurred.

The parties make reference to several depositions, but only McLaughlin’s appears transcribed in the record before us.  In it, McLaughlin testified that he met with Mayher while development of the Preserve was still in the planning stages.  They discussed the possibility of appropriating the land owned by three separate individuals for a planned unit development, with enough acreage interspersed to house a golf course, "[a]nd then they’d have the option of building around it, and then the area to the south would still be somewhat commercial or industrial.”  McLaughlin stated that after that meeting, the date of which he could not recall, Mayher "apparently approached the other property owners,” but that after that, plans for the golf course "never went anywhere.”  He had spoken to McLaughlin "a couple of times” after the meeting, and McLaughlin represented that no progress on the golf course had been made, and that those conversations took place when Mayher was still in the process of planning the Preserve.

McLaughlin identified the plans for the development of Marley Creek, which were submitted to the Orland Park Village Board in July 1997, and which did not clearly indicate whether or not there were plans to construct a golf course adjacent to the development.  McLaughlin did not recall having any conversations with Mayher or any of the other developers or their agents concerning the construction of a golf course after that date, but he did recall seeing preliminary plans for a golf course from an MGM planner at some point.  He also stated that the Village Board had been in discussions with Davidson Concrete to locate a manufacturing plant in the same area as the Preserve before Mayher and MGM submitted the final plans for the development’s construction.  McLaughlin did not have personal knowledge as to whether defendants had made definite representations concerning construction of the golf course to their eventual and potential buyers.

The Orland Park Village Board Plan Commission minutes from May 23, 2000, contained an item concerning plans for the proposed Orland Park Business Center, with Mayher listed as one of the petitioners.  Another petitioner, Duane Linden, stated that plans for the golf course adjacent to the Preserve were conceived in 1996 and that he had drafted preliminary sketches for its development, but that plans were abandoned when a middle parcel of land could not be acquired.  Residents present at the meeting indicated that MGM’s answering service still referenced plans for a golf course adjacent to the Preserve, and that they would still like a golf course to be built, and had concerns about the proposed construction of the concrete plant on that site.  Mayher stated that the development of the golf course was always proposed but was never a "for sure thing.”  John Coghill, who owned 200 acres west of the Preserve, stated that he and Mayher attempted to finalize plans for the golf course but were unable to acquire the remaining necessary land from a third owner, while Linden indicated that an executive-sized golf course could still be constructed on the property.  

A March 28, 2001, article from The Star newspaper quoted McLaughlin as confirming that the golf course was included in the initial plans for Marley Creek, but that one of the necessary parties to its development "changed his mind and that put the kibosh on it.”

Plaintiffs contend on appeal that the circuit court held them to an improper pleading standard, arguing that they were not required to allege exactly when defendants abandoned plans for the golf course.  They contend that Illinois law does not require complainants pleading fraud to allege with specificity when the defendant came up with a deceptive scheme, acquired knowledge of the alleged undisclosed facts, or knowledge of the falsity of those undisclosed facts.  We disagree.

Under Illinois law, plaintiffs pleading fraud claims must allege that defendants knew of defect or undisclosed material facts at the time that the plaintiffs were induced to purchase a product or service.  See 
Miller
, 326 Ill. App. 3d at 658.  The named plaintiffs all purchased their properties in the Preserve between 1997 and 2000.  In order to successfully plead fraud, plaintiffs had to allege that defendants knew that plans for the golf course had been abandoned at the times plaintiffs purchased their properties.  Their complaint asserts that defendants had that knowledge in 1996, prior to each sale of each of their properties.  However, the exhibits attached in support of that allegation fail to establish when plans for the golf course were abandoned – only that they were abandoned at an unspecified time – and when defendants came to know of their abandonment.  Indeed, the record indicates that MGM was open to the idea of constructing a golf course in the Preserve as recently as May of 2000.  For plaintiffs to allege that defendants must have known that plans for the golf course were abandoned before each of them purchased their properties, with only vague assertions of fact as to exactly when the plans were abandoned, was conclusory and was insufficient to support the element of defendants’ knowing omission or concealment necessary to assert claims for common law fraud and consumer fraud.  Accordingly, we find that the trial court was not in error in dismissing those counts in plaintiffs’ second amended complaint.

Plaintiffs also contend that the trial court erred in not allowing them to replead their claims for common law and consumer fraud.  They argue that the court abused its discretion because discovery was not yet completed and because the court erroneously assumed that plaintiffs’ claims turned solely on whether defendants abandoned plans for the golf course in 1996, and that some plaintiffs’ claims could still be valid even if they were abandoned at a later date.  We disagree.

A plaintiff has no absolute right to amend a pleading, and the decision to grant or deny an amended complaint is within the sound discretion of the trial court, whose decision will not be disturbed absent an abuse of discretion.  
Century-National Insurance Co. v. Tracy
, 316 Ill. App. 3d 639, 646 (2000); 
Schenker v. Chicago Title & Trust Co.
, 128 Ill. App. 3d 488, 491 (1984).   Trial courts should exercise their discretion liberally in favor of allowing amendments where doing so furthers the ends of justice.  
Muirfield Village-Vernon Hills, LLC, v. K. Reinke, Jr. & Co.
, 349 Ill. App. 3d 178, 195 (2004).   

In deciding whether or not to allow a plaintiff to amend his or her complaint, a trial court is to consider whether: (1) the proposed amendment would cure the defective pleading; (2) the other parties would be prejudiced or surprised by the proposed amended complaint; (3) the plaintiff had previous opportunities to amend the complaint; and (4) the proposed amendment is timely.  
Muirfield Village-Vernon Hills
, 349 Ill. App. 3d at 195-96.

In this case, the circuit court denied plaintiffs the opportunity to replead their fraud claims based on their efficacy and the prior opportunities to amend.  The parties had been participating in discovery for seven months; plaintiffs had taken several depositions and had been proffered numerous documents by defendants, and had no outstanding discovery requests at the time of dismissal.  Plaintiffs were not able to allege when defendants became aware that plans for constructing the golf course adjacent to the Preserve had been abandoned, despite having filed their claims on three occasions, with the trial court granting several extensions in between filings. As stated above, plaintiffs were required to allege that defendants knew that the plans for the golf course had been abandoned at the times that they sold properties to plaintiffs.  Plaintiffs were not able to allege when that occurred, only that it did occur at some time.  Without that specific allegation, their claims of fraud were insufficient on their face.  We fail to see how repleading would have aided in their survival or furthered the ends of justice.  Accordingly, we conclude that the circuit court did not abuse its discretion in denying plaintiffs the opportunity to amend their fraud claims.

For the forgoing reasons, we affirm the judgment of the circuit court.

QUINN, P.J., and THEIS, J., concur.