2026 IL App (1st) 250705

No. 1-25-0705

Opinion filed February 3, 2026

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARSHA J. MARTIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 L 1528 |
| | ) | |
| FIFTH THIRD BANK, NATIONAL ASSOCIATION, | ) | |
| and JOSEPH VALDIVIA, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Fifth Third Bank, National Association, Defendant- | ) | Anthony C. Swanagan, |
| Appellee). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Ellis and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Marsha J. Martin appeals from the circuit court's dismissal of her negligence claim

against defendant Fifth Third Bank, National Association (Fifth Third). The circuit court dismissed

plaintiff's negligence claim pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS

5/2-615 (West 2024)), finding that Fifth Third did not owe plaintiff a duty of care because she was

not a Fifth Third customer. We reverse and remand for further proceedings consistent with this opinion.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. Amended Complaint

¶ 4     Plaintiff's amended complaint alleged that, in February 2022, she received an e-mail that appeared to be from Coastal Custom Builders of NWFL (Coastal Custom) requesting payment for construction services Coastal Custom had provided to plaintiff. However, defendant Joseph Valdivia hacked Coastal Custom's e-mail account and deceived plaintiff into wiring funds to a Fifth Third account that Valdivia owned instead of Coastal Custom's account. Plaintiff, a Wells Fargo customer, wired funds from her Wells Fargo account to the Fifth Third account as the e-mail instructed. Valdivia then withdrew the funds from his Fifth Third account and transferred them elsewhere. When the real Coastal Custom requested payment, plaintiff contacted Wells Fargo, which contacted Fifth Third. However, Fifth Third failed to recover the funds that plaintiff wired to Valdivia.

¶ 5     Plaintiff alleged that, prior to defrauding her, Valdivia had "repeatedly" used his Fifth Third accounts to defraud others, of which Fifth Third was aware. Therefore, plaintiff alleged, it was foreseeable to Fifth Third that Valdivia would continue to use his accounts to perpetrate wire fraud. Nevertheless, Fifth Third did not close Valdivia's accounts, prevent or verify large wire transfers to or from his accounts, freeze his accounts, prevent withdrawals from his accounts, or implement standards and procedures to prevent his fraudulent schemes. Plaintiff alleged that, due to Fifth Third's failure to act, she "suffered a loss of funds, as well as the imposition of additional expenses and hardships, in an amount in excess of $50,000."

¶ 7      Plaintiff pled counts of fraudulent misrepresentation, conversion, unjust enrichment, and negligence against Valdivia. Relevant to this appeal, plaintiff pled one count of negligence against Fifth Third.

¶ 8                                                    B. Motion to Dismiss

¶ 9      Fifth Third moved to dismiss plaintiff's negligence claim pursuant to section 2-615. Fifth Third argued that plaintiff could not plead negligence against the bank because "[u]nder Illinois law, a bank like Fifth Third does not owe a duty of care to a noncustomer." In support of that proposition, Fifth Third cited federal district and circuit court decisions and an Illinois circuit court order. Additionally, Fifth Third argued that article 4A of the Uniform Commercial Code (UCC) (810 ILCS 5/art. 4A (West 2024)) preempted plaintiff's negligence claim. According to Fifth Third, article 4A exclusively governs the rights and liabilities of parties to wire transfers and bars common-law claims arising out of wire transfers. Finally, Fifth Third argued that, pursuant to *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982), plaintiff could not recover for "purely economic losses" under a negligence theory of liability.

¶ 10     In response, plaintiff contended that whether Fifth Third owed her a duty of care depended not on whether she was a customer of the bank but on a four-factor analysis under Illinois case law such as *Jarosz v. Buona Cos.*, 2022 IL App (1st) 210181, and *Bruns v. City of Centralia*, 2014 IL 116998: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. Applying this four-factor test, plaintiff argued that Fifth Third owed her a duty of care because (1) "it was reasonably foreseeable that an innocent party, like [plaintiff],

would be injured if Fifth Third failed to follow its own internal safeguards to prevent fraud by accountholders like Valdivia," (2) "it was highly likely that such an injury would occur," (3) "[t]he burden of guarding against this injury to Fifth Third is minimal because Fifth Third is already required by federal and state statutes, along with its own internal policies, to monitor customer accounts for fraud and suspicious behavior," and (4) "there are no adverse consequences to placing this burden on Fifth Third, and in fact, Fifth Third is the only party in a position to prevent such injuries." Additionally, plaintiff argued that article 4A of the UCC did not preempt her negligence claim because she did not allege that Fifth Third was negligent in processing the wire transfer that gave rise to this lawsuit. Rather, Fifth Third was negligent in failing to prevent Valdivia's use of his accounts to commit fraud. Finally, plaintiff argued that the *Moorman* doctrine applied only to products liability claims and "damages for stolen property which was not the subject of a contract between the parties is not an economic loss pursuant to the *Moorman* doctrine."

¶ 11 Fifth Third's reply insisted that the bank owed no duty of care to plaintiff as a noncustomer but did not address her four-factor duty analysis. In addition, the reply appeared to withdraw Fifth Third's *Moorman* doctrine argument, explaining that, because Fifth Third owed no duty to plaintiff, "further analysis of the *Moorman* doctrine is unnecessary."

¶ 12 The circuit court granted Fifth Third's motion to dismiss with prejudice as follows:

"The Uniform Commercial Code, 810 ILCS 5/4A-404, provides that if a bank accepts a wire transfer it is obligated, subject to exceptions not raised here, to pay the beneficiary, and will be liable to the beneficiary if it fails to make the payment. Martin cites cases from other jurisdictions that hold that the subject UCC provision does not preempt contrary provisions of state common law, but those precedents have no application here,

since Illinois common law does not conflict with the UCC, and instead serves as an additional barrier to her negligence claims against the bank: 'Under Illinois law, a bank does not owe a common law duty of care to a non-customer.' *Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016), citing *Radwill v. Romeo*, 2013 IL App (1st) 110912-U, P29. The bank's motion to dismiss Martin's complaint for failure to state a claim for relief is accordingly granted.

Whether a duty exists is a question of law for the court to decide. *Bruns v. City of Centralia*, 2014 IL 116998, P13. Since there is no legal basis for Martin's claim against the bank under Illinois law, the court finds that no amended pleading would be viable against the bank. The court therefore grants Fifth Third's motion with prejudice. Pursuant to Supreme Court Rule 304(a), the court finds that there is no just reason to delay enforcement or appeal of this order."

¶ 13    Plaintiff timely appealed.

¶ 14                    II. ANALYSIS

¶ 15    The circuit court dismissed plaintiff's negligence claim against Fifth Third pursuant to section 2-615. A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint. *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 25. We accept as true all well-pleaded facts, and we draw all reasonable inferences in the light most favorable to the plaintiff. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26. Illinois is a fact-pleading jurisdiction. *Id.* The plaintiff need not set forth evidence in her complaint, but she must allege facts sufficient to bring her claim within a legally recognized cause of action. *Id.* A plaintiff cannot rely on conclusions of law or claims unsupported by specific factual allegations. *Id.* We review the sufficiency of the

complaint *de novo* (*id.*), meaning that we perform the same analysis as the circuit court (*Xuedong Pan v. King*, 2022 IL App (1st) 211482, ¶ 16).

¶ 16    Plaintiff's amended complaint pled one count of negligence against Fifth Third. To state a claim of negligence, a plaintiff must allege that the defendant owed her a duty, the defendant breached that duty, and the breach proximately caused the plaintiff's injury. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 21. In this case, only the element of duty is at issue. The existence of a duty is a question of law we review *de novo. Vancura v. Katris*, 238 Ill. 2d 352, 383 (2010). But before we conduct a *de novo* analysis of duty, we must explain why the circuit court's ruling on duty applied the incorrect legal standard.

¶ 17                          A. Banks' Duty of Care to Noncustomers

¶ 18    The circuit court dismissed plaintiff's negligence claim against Fifth Third based on the principle that a bank does not owe a duty of care to a noncustomer. That is an accurate statement of federal case law, but it is not the applicable duty analysis under Illinois law.

¶ 19    The principle that a bank does not owe a duty of care to a noncustomer appears in federal district and circuit court decisions. See, *e.g.*, *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004); *Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016); *Thompson v. Capital One Bank, Inc.*, 375 F. Supp. 2d 681 (N.D. Ill. 2005). However, such decisions are not binding authority on Illinois state courts. *Reichert v. Board of Fire & Police Commissioners of Collinsville*, 388 Ill. App. 3d 834, 845 (2009). "Because lower Federal courts exercise no appellate jurisdiction over State courts, decisions of lower Federal courts are not conclusive on State courts, except insofar as the decision of the lower Federal court may become the law of the case." *People v. Kokoraleis*, 132 Ill. 2d 235, 293-94 (1989).

¶ 20    While the federal rule that a bank does not owe a duty of care to a noncustomer is appealing in its simplicity, there is little basis for concluding that it is the law in Illinois. Our supreme court has not adopted the federal rule, and there appears to be no statute codifying the federal rule. Case law suggests that our supreme court takes a broader view of duty than federal courts. Federal courts hold that "banks do not have a duty of care to noncustomers with whom they have no direct relationship." See, *e.g.*, *Havassy v. Mercedes-Benz Financial Services USA, LLC*, 432 F. Supp. 3d 543, 549 (E.D. Pa. 2020). But the Illinois Supreme Court holds that "the relationship between the plaintiff and defendant need not be a direct relationship" to give rise to a duty of care. (Internal quotation marks omitted.) *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶¶ 22, 35 (holding that a school district where a teacher was previously employed owed a duty to students in the district where he was next employed to provide accurate information regarding his history of sexual misconduct). In Illinois, the general duty of care "does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." (Internal quotation marks omitted.) *Simpkins*, 2012 IL 110662, ¶ 19.

¶ 21    Only one published Illinois decision has adopted the federal rule: *Praither v. Northbrook Bank & Trust Co.*, 2021 IL App (1st) 201192. *Praither* claims that "Illinois courts have consistently held that banks do not owe a general duty of care to noncustomers." *Id.* ¶ 21. But the only case *Praither* cites is *Thompson*, a federal case that cites no Illinois authority on that point. *Thompson*, 375 F. Supp. 2d at 683. *Praither* is incorrect; Illinois courts have *not* consistently held that banks do not owe a duty of care to noncustomers. Even though *Praither* is the only published Illinois decision that adopts the federal rule, the circuit court did not cite it. Instead, the circuit court cited a nonbinding federal district court decision, *Zachman*, and a nonprecedential Rule 23

order, *Radwill v. Romeo*, 2013 IL App (1st) 110912-U. See Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025) (Unpublished Illinois appellate decisions issued prior to January 1, 2021, are "not precedential except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case.").

¶ 22    We rely on our supreme court's long-standing duty analysis in negligence cases rather than on nonbinding and nonprecedential decisions regarding duty. The Illinois Supreme Court holds that whether a duty exists depends on (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Bogenberger*, 2018 IL 120951, ¶ 22; *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 13; *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 27; *Bruns*, 2014 IL 116998, ¶ 14. This duty analysis governs "every negligence case" including this one. See *Stone v. Northeast Illinois Regional Commuter Ry. Corp.*, 2023 IL App (1st) 220529-U, ¶ 44.[1]

¶ 23                                   B. Duty of Care

¶ 24    We now consider whether plaintiff's amended complaint adequately pleads that Fifth Third owed her a duty of care.

¶ 25    In general, every person or business "owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act." (Internal quotation marks omitted.) *Bogenberger*, 2018 IL 120951 ¶ 22. "[S]uch a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote

---

[1]Unpublished decisions issued *after* January 1, 2021, "may be cited for persuasive purposes." Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025).

and unknown persons." (Internal quotation marks omitted.) *Id.* "Thus, where an individual's course of action creates a foreseeable risk of injury, the individual has a duty to protect others from such injury." *Id.* "The duty inquiry focuses on whether the plaintiff and the defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* Four factors guide the duty analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.*

¶ 26    We find that, under this four-factor test, plaintiff *may* be able to successfully allege that Fifth Third owed her a duty of care. However, her amended complaint has certain deficiencies that require her to replead.

¶ 27                          1. Foreseeability and Likelihood of Injury

¶ 28    Courts evaluate an injury's foreseeability and likelihood using the same standards and facts. *Jarosz*, 2022 IL App (1st) 210181, ¶ 37-38. To be foreseeable, an injury must be objectively reasonable to expect. *Bruns*, 2014 IL 116998, ¶ 33. We evaluate foreseeability based on " 'what was apparent to the defendant at the time of his now complained of conduct,' " not in hindsight. *Jarosz*, 2022 IL App (1st) 210181, ¶ 37 (quoting *Cunis v. Brennan*, 56 Ill. 2d 372, 376 (1974)). Injuries that are common are foreseeable and likely to occur, whereas freakish, bizarre, or fantastic incidents are not. *Id.* ¶ 38 (citing *Doe-3*, 2012 IL 112479, ¶ 31). When laws or regulations exist to prevent a certain type of injury, that suggests the injury is foreseeable and likely to occur. *Bogenberger*, 2018 IL 120951, ¶ 46 ("The existence of hazing statutes across the country,

including \*\*\* Illinois's hazing statute, indicates that injury due to hazing is reasonably foreseeable.").

¶ 29     Generally, it is foreseeable to a bank that a customer could use an account to defraud parties to wire transfers. Wire transfers are common transactions. See *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 36 (bank employees testified that they processed 15 to 20 wire transfers per day on average). Wire fraud is a common crime.[2] See Melanie Cherdack, *Gone Phishing: Bank and Broker-Dealer Liability for Electronic Wire Fraud Scams*, 31 PIABA Bar J. 1, 3 (2024) ("One of the most common scams involves fraudsters using electronic access to a customer [bank] account to wire money to a third party.").[3] Wire fraud using bank accounts is common, not a "freakish, bizarre, or fantastic" type of incident, so it is generally foreseeable to banks. See *Doe-3*, 2012 IL 112479, ¶ 31. Furthermore, the Code of Federal Regulations requires banks to report suspected wire fraud (12 C.F.R. § 21.11 (2022); 12 C.F.R. § 353.3 (2020)), and the Savings Bank Act allows banks to share information "as necessary to protect against or prevent actual or potential fraud" (205 ILCS 205/4013(c)(16) (West 2024)). The fact that such regulations exist indicates that wire fraud using bank accounts is foreseeable to banks. See *Bogenberger*, 2018 IL 120951, ¶ 46. Therefore, a plaintiff may be able to allege the first two elements of duty against a bank.[4]

¶ 30     However, just because wire fraud is generally foreseeable to banks, that does not mean plaintiff has adequately pled facts to allege that Valdivia's use of his accounts was foreseeable to

---

[2]Fifth Third's motion to dismiss acknowledged that "[w]ire fraud is both increasingly common and sophisticated in today's world."

[3]The PIABA Bar Journal is a publication of the Public Investors Advocate Bar Association. The author, Melanie Cherdack, is the associate director of the investor rights clinic at the University of Miami School of Law.

[4]Of course, we do not impose a rule of strict liability that banks are liable for any and all wire fraud that occurs in their customers' accounts just because wire fraud is foreseeable to banks generally.

Fifth Third *in this case*. She has not. Plaintiff's factual allegations are not specific enough for us to determine whether Fifth Third could have reasonably foreseen that Valdivia would likely use his account to defraud her. See *Simpkins*, 2012 IL 110662, ¶ 27. Paragraphs 17, 18, 44, and 45 of the amended complaint allege that Valdivia "was perpetrating a fraudulent wire transfer scheme against third parties prior to the fraud committed against [plaintiff]" and Fifth Third was "on notice" of Valdivia's conduct because he was using his Fifth Third accounts to commit fraud. These allegations are more conclusory than factual. Plaintiff alleges no specific facts about who Valdivia defrauded in the past, when those incidents occurred, the extent and mechanics of his fraud schemes, or why Fifth Third was (or should have been) aware of them. Plaintiff alleges nothing about whether Valdivia was charged with or convicted of crimes. Critically, we cannot tell what facts were apparent to Fifth Third when, according to plaintiff, the bank should have prevented Valdivia's fraudulent activity. See *Jarosz*, 2022 IL App (1st) 210181, ¶ 38.

¶ 31 Plaintiff may or may not be able to allege such specific facts. Because the circuit court dismissed her negligence claim with prejudice, she did not have a chance to address these deficiencies. Accordingly, the proper remedy is to remand for plaintiff to replead her negligence claim against Fifth Third. See *Simpkins*, 2012 IL 110662, ¶ 28.

¶ 32 2. Burden and Consequences of Guarding Against the Injury

¶ 33 The third and fourth factors of the duty analysis concern the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Bruns*, 2014 IL 116998, ¶ 36.

¶ 34 Paragraphs 19 and 46 of the amended complaint allege measures Fifth Third should have taken to prevent Valdivia from committing fraud, such as closing his accounts, freezing his funds, preventing or verifying large wire transfers to his accounts, and ensuring that "proper standards

and procedures were in place" and that bank employees followed them. However, plaintiff alleges nothing about the burden or consequences those measures would impose on Fifth Third. That is insufficient to plead the third and fourth elements of duty.

¶ 35 Plaintiff's brief argues that "Fifth Third's burden of guarding against this injury is minimal" because "Fifth Third is already required by federal and state statutes (including, but not limited to, the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*), along with its own internal policies, to monitor customer accounts for fraud and suspicious behavior." Plaintiff also contends that Fifth Third is in the best position to prevent fraud because only the bank can "restrict wire transfer activities for those accounts which Fifth Third knew were actively engaging in fraud."

¶ 36 However, Plaintiff's amended complaint does not allege any of these matters. Plaintiff may be correct that there is little burden in requiring Fifth Third to implement fraud prevention measures that existing law already requires. See *Bogenberger*, 2018 IL 120951, ¶ 46 (finding that the burden of guarding against hazing injuries was "infinitesimal" because state law and internal rules already required universities and fraternities to do so). On the other hand, it may be burdensome to require Fifth Third to intervene every time a customer receives a large wire transfer or makes a large withdrawal. Some of the measures plaintiff proposes might drive away customers by delaying or preventing important transactions based on minimal suspicion of improper activity. But plaintiff's complaint alleges nothing with respect to these matters, so neither we nor the circuit court can conduct the burden and consequences analysis. Accordingly, plaintiff has not adequately pled the third and fourth elements of duty.

¶ 37 3. Information and Belief

¶ 38    Plaintiff's inconsistent and vague use of the phrase "[u]pon information and belief" muddies whether her allegations are factual or speculative. For example, paragraph 17 states, "Upon information and belief, Defendant Valdivia has repeatedly used his accounts at Defendant Fifth Third to perpetrate fraudulent wire transfer schemes." This is essentially the same allegation as paragraph 44 with the added qualifier "[u]pon information and belief." It is unclear whether plaintiff means that (1) it is a fact that Valdivia used his Fifth Third accounts to commit fraud in the past or (2) plaintiff merely suspects that may have occurred.

¶ 39    "[A]n allegation made on information and belief is not equivalent to an allegation of relevant fact." (Internal quotation marks omitted.) *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40. However, at the pleading stage, a plaintiff may not be able to confirm information in the defendant's control, so she may have to allege certain facts on information and belief. *Id.* That said, a plaintiff *will* know how she learned (or attempted to learn) the facts she alleges on information and belief, so her complaint should allege her efforts to discover those facts. *Id.* For example, in a negligence case involving hazing, a plaintiff can explain that his allegations on information and belief are based on police reports, witness statements, and media reports and that he cannot access certain information due to pending criminal cases. *Bogenberger v. Pi Kappa Alpha Corp.*, 2016 IL App (1st) 150128, ¶ 34, *rev'd in part on other grounds*, 2018 IL 120951.

¶ 40    In this case, plaintiff does not explain her factual basis for her allegations on information and belief. Therefore, those allegations are not the equivalent of allegations of fact. See *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 84 (citing *Patrick Engineering*, 2012 IL 113148, ¶ 40, citing *Whitley v. Frazier*, 21 Ill. 2d 292, 294 (1961)). Plaintiff must replead to state specific factual

allegations supporting her negligence claim against Fifth Third. If plaintiff must make allegations on information and belief, then she must plead how she learned what she does know or her efforts to discover facts related to those allegations.

¶ 41                                    4. Dismissal With Prejudice

¶ 42    Because plaintiff appealed the dismissal of her negligence claim against Fifth Third without seeking leave to amend in the circuit court, we could find that she has forfeited the right to replead. See *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 435 (2004); *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America*, 2020 IL App (2d) 190034, ¶ 55. However, a court should not dismiss a complaint pursuant to section 2-615 unless it is clear that the plaintiff cannot prove any set of facts that would entitle her to relief. *Dent*, 2022 IL 126795, ¶ 25. Instead, courts should liberally allow amendments to pleadings. *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1003 (2005).

¶ 43    Here, plaintiff should have the opportunity to plead, and the circuit court should have the opportunity to decide the issue of duty based on our supreme court's four-factor analysis. Accordingly, we reverse the dismissal of plaintiff's negligence claim against Fifth Third and order that the circuit court give plaintiff leave to file a second amended complaint. Going forward, the circuit court must analyze duty by applying the four-factor test set out in Illinois Supreme Court authority.

¶ 44    To be clear, we do not decide whether Fifth Third owes a duty to plaintiff. We merely find that it is *possible* plaintiff could plead the existence of such a duty sufficient for her negligence claim to survive a section 2-615 motion to dismiss.

¶ 45                                    C. UCC Section 4A

- 14 -

¶ 46 In briefing Fifth Third's motion to dismiss, the parties disputed whether article 4A of the UCC (810 ILCS 5/art. 4A (West 2024)) preempts plaintiff's common-law negligence claim against Fifth Third. Article 4A governs banks' and consumers' rights and obligations with respect to funds transfers, commonly known as wire transfers. *Id.* § 4A-102; *Whitaker*, 2020 IL 124792, ¶ 17. Fifth Third argued that, because this case arises out of a wire transfer, article 4A exclusively governs any claim plaintiff might have against Fifth Third and bars common-law claims such as negligence.

¶ 47 The circuit court's ruling did not address preemption under article 4A. The court stated only that "Illinois common law does not conflict with the UCC" and dismissed plaintiff's negligence claim based on the federal rule that a bank does not owe a duty of care to a noncustomer. On appeal, Fifth Third takes the position that the circuit court's ruling "was properly grounded in Illinois common law and *did not* include any preemption findings" under article 4A. (Emphasis in original.).

¶ 48 We agree that the circuit court did not rule on whether article 4A preempts plaintiff's negligence claim. Because the circuit court did not rule on that issue, we need not address it. See *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 52 (the circuit court did not rule on *laches* as a basis for dismissal, so the appellate court and the supreme court did not address that issue either).

¶ 49                                     D. *Moorman* Doctrine

¶ 50 Finally, Fifth Third's appellate brief resurrects an argument the bank appears to have abandoned in the circuit court: the *Moorman* doctrine. "The *Moorman* doctrine, also known as the economic loss doctrine, states that there can be no recovery in tort for purely economic losses." *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶ 43 (citing *Moorman*, 91 Ill. 2d at 88,

and citing *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 812 (7th Cir. 2018)). Fifth Third argues that, because plaintiff alleges only economic loss, she cannot sue the bank for the tort of negligence. But the circuit court's ruling did not address the *Moorman* doctrine, so we need not resolve this issue either. See *Richter*, 2016 IL 119518, ¶ 52.

¶ 51                                                       III. CONCLUSION

¶ 52     For the foregoing reasons, we reverse the dismissal of plaintiff's negligence claim against Fifth Third and remand for further proceedings consistent with this opinion.

¶ 53     Reversed and remanded.

| | |
|---|---|
| ***Martin v. Fifth Third Bank, National Ass'n*, 2026 IL App (1st) 250705** | |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-L-1528; the Hon. Anthony C. Swanagan, Judge, presiding. |
| **Attorneys for Appellant:** | R. Taylor Matthews III and Patrick F. Ganninger, of Lewis Rice LLC, of St. Louis, Missouri, for appellant. |
| **Attorneys for Appellee:** | Alexander N. Wright and Megan R. Garofalo, of Dinsmore & Shohl, LLP, of Chicago, for appellee. |