# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662

---

| | |
|---|---|
| Caption in Supreme Court: | CYNTHIA SIMPKINS, Appellee, v. CSX TRANSPORTATION, INC., Appellant. |

| | |
|---|---|
| Docket No. | 110662 |
| Filed | March 22, 2012 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A 2007 "take-home asbestos" claim, dismissed with prejudice after defendant employer argued it had no duty as a matter of law to its worker's injured wife, was remanded for repleading to attempt to establish the foreseeability element of duty by specific facts as to what was known about the dangers of secondhand exposure at the time it occurred, between 1958 and 1964. |

| | |
|---|---|
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Madison County, the Hon. Daniel J. Stack, Judge, presiding. |

| | |
|---|---|
| Judgment | Appellate court judgment affirmed.<br>Cause remanded with directions. |

| | |
|---|---|
| Counsel on Appeal | Kurt E. Reitz and Heath H. Hooks, of Thompson Coburn LLP, of Belleville, and Michele Odorizzi, of Chicago, and Andrew Tauber, of Washington, D.C., both of Mayer Brown LLP, for appellant.<br><br>John A. Barnerd, Amy Garrett, John D. Simmons and Ted N. Gianaris, of Simmons Browder Gianaris Angelides & Barnerd LLC, of Alton (Charles W. Chapman, of Wood River, of counsel), and J. Timothy Eaton and Patricia S. Spratt, of Shefsky & Froelich Ltd., and John D. Cooney, of Cooney & Conway, all of Chicago, for appellee. |
| Justices | JUSTICE GARMAN delivered the judgment of the court, with opinion.<br>Chief Justice Kilbride and Justices Karmeier and Theis concurred in the judgment and opinion.<br>Justice Freeman dissented, with opinion, joined by Justice Burke.<br>Justice Thomas took no part in the decision. |

**OPINION**

¶ 1    Plaintiff, Annette Simpkins, filed a three-count complaint against defendant, CSX Transportation (CSXT), alleging negligence, wanton and willful conduct, and strict liability for her exposure to take-home asbestos on the clothing of her husband, who worked for defendants from 1958 to 1964. Annette Simpkins died of mesothelioma and her daughter, Cynthia Simpkins, was substituted as the plaintiff as the special administrator of Annette's estate. The circuit court of Madison County granted defendant's motion to dismiss (735 ILCS 5/2-615 (West 2006)). The appellate court reversed and remanded the cause to the circuit court. We granted CSXT's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). We affirm the appellate court's reversal of the trial court's judgment but hold that the allegations in plaintiff's complaint are insufficient to establish that defendant owed a duty of care to Annette. We remand the cause to the circuit court to allow plaintiff to amend her complaint.

¶ 2                                BACKGROUND

¶ 3    On January 19, 2007, Annette Simpkins filed a complaint in the circuit court of Madison County, alleging she had contracted mesothelioma cancer due to exposure to asbestos from various sources. Her complaint named over 70 defendants, including her former employers and former employers of her family members, and manufacturers, sellers, distributors, and installers of asbestos. Relevant to this appeal, she alleged that her inhalation of asbestos fibers brought home on her former husband's body and work clothes during their marriage

was a direct and proximate cause of her illness. She alleged that her husband, Ronald, while employed by defendant from 1958 to 1964, was exposed to asbestos fibers emanating from asbestos-containing materials and raw asbestos present and being used at defendant's premises. Ronald carried these fibers home on his person and clothing, and Annette was exposed to and inhaled, ingested, or otherwise absorbed these asbestos fibers. Further, Annette alleged that defendant knew or should have known that exposure to asbestos fibers posed an unreasonable risk of harm to her and "others similarly situated."

¶ 4 The complaint alleged three bases for liability against defendant[1]: strict liability for engaging in the ultrahazardous activity of using asbestos-containing products and raw asbestos in their plants so as to cause the release of asbestos fibers (count VII), negligence for failing to take precautions to protect Ronald Simpkins' family from take-home asbestos exposure (count VIII), and willful and wanton misconduct (count IX).[2]

¶ 5 On February 28, 2007, defendant filed a motion to dismiss the three counts of the complaint against it pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)). Defendant argued that, because "[e]mployers do not owe any duty to a third-party, non-employee, who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace," it owed no duty to plaintiff and, therefore, no liability can be imposed upon it. Defendant attached to its motion a memorandum of law citing similar cases from other jurisdictions.

¶ 6 On April 2, 2007, Annette Simpkins died. On May 2, her daughter, Cynthia, was appointed the special administrator of Annette's estate and was later substituted as the plaintiff here.

¶ 7 On May 18, 2007, the circuit court heard arguments on defendant's motion to dismiss. In opposition to the motion to dismiss, plaintiff filed a 21-page memorandum accompanied by 84 pages of supporting documentation and affidavits. Concluding that plaintiff's arguments regarding duty "sound[ed] like a great argument for the Supreme Court," the circuit court allowed the motion to dismiss and granted plaintiff an interlocutory appeal on the issue. The court also severed the claims against CSXT from plaintiff's claims against other defendants.

¶ 8 On appeal, the appellate court noted that all three counts involved allegations that the risk of harm to Annette Simpkins was foreseeable. 401 Ill. App. 3d 1109, 1112. The parties did not distinguish the three counts, so the appellate court discussed them together. *Id*. After thoroughly discussing the principles of duty, the appellate court held that plaintiff's

---

[1]The complaint named both "CSX Corporation and/or CSX Transportation, Inc.," as the defendant. In its motion to dismiss, CSX Corporation argues that it was improperly named in plaintiff's complaint. On March 16, 2007, the parties stipulated to a dismissal of CSX Corporation without prejudice. The case proceeded with CSX Transportation, Inc., as the named defendant.

[2]Counts VII, VIII, and IX of plaintiff's complaint included defendant Dow Chemical Company, Ronald's employer from 1964 to 1965. Only CSXT filed the motion to dismiss, and Dow Chemical Company did not join this motion. It is not a party to this appeal.

complaint "sufficiently states a cause of action to establish a duty of care" owed by defendant to plaintiff. *Id*. at 1120.

¶ 9 This court allowed defendant's petition for leave to appeal pursuant to Supreme Court Rule 315 (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)).

¶ 10                                             ANALYSIS

¶ 11 Defendant argues that because it had no direct relationship with Annette Simpkins, it cannot be liable for her injury. Because Annette was not defendant's employee, never visited its premises, and was not a vicarious beneficiary of any duty defendant owed her husband, defendant asserted that it owed Annette no duty. Plaintiff argues in response that defendant created the risk of harm at issue and, in such a case, a preexisting special relationship is not a prerequisite to a finding that there was a duty owed by defendant to plaintiff.

¶ 12                               Procedural Posture on Appeal

¶ 13 This appeal is before the court on defendant's motion to dismiss under section 2-615 (735 ILCS 5/2-615 (West 2006)), which challenges the legal sufficiency of a complaint based on defects apparent on its face. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Therefore, we review *de novo* an order granting or denying a section 2-615 motion, accepting as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Id.* We also construe the allegations in the complaint in the light most favorable to the plaintiff. *Id.* A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 14 We note first that plaintiff's complaint alleged strict liability, willful and wanton conduct, and negligence. In both the circuit court and the appellate court, the parties did not distinguish the counts. Further, in their briefs to this court, the parties' arguments focus on whether the complaint established, on its face, the existence of a duty in the context of plaintiff's negligence claim. Accordingly, we limit our review to the question of whether plaintiff's complaint was sufficient to establish a duty for purposes of a complaint of negligence.

> "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Id.* at 430.

The issue before us is whether a duty of care was owed by defendant to plaintiff in this case. "Whether a duty exists in a particular case is a question of law for the court to decide." *Id.*

¶ 15                                          Duty of Care

¶ 16 Defendant argues that plaintiff failed to state a cause of action against it because it did not owe her a duty of care. "Employers do not owe any duty to a third-party, nonemployee, who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace," defendant argues, because a duty of care requires the existence of a

-4-

specific relationship between the parties. Here, defendant and plaintiff had no "direct relationship," as plaintiff was never defendant's employee and never set foot on defendant's premises. The mere fact that plaintiff's husband had been employed by defendant does not, defendant contends, create a duty to plaintiff.

¶ 17   The concept of duty in negligence cases is involved, complex, and nebulous. *Marshall*, 222 Ill. 2d at 435. This ambiguity in the law has provided fodder for much scholarly debate and confusion. *Id.* at 435-36. As we have noted, this confusion can stem from the fact that " 'the existence of a duty is not a discoverable fact of nature' " but, rather, involves considerations of public policy. *Id.* at 436 (quoting 1 Dan B. Dobbs, The Law of Torts § 229, at 582 (2001)).

¶ 18   The arguments in this case reflect a further point of confusion in the duty analysis: the discussion of a "relationship" between defendant and plaintiff. As we have held in the past, "[t]he touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a *relationship* to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." (Emphasis added.) *Marshall*, 222 Ill. 2d at 436; see also *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226 (2010); *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280-81 (2007). The "relationship" referred to in this context acts as a shorthand description for the sum of four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Krywin*, 238 Ill. 2d at 226; *Forsythe*, 224 Ill. 2d at 281; *Marshall*, 222 Ill. 2d at 436-37. The determination of such a "relationship," as sufficient to establish a duty of care, requires considerations of policy inherent in the consideration of these four factors and the weight accorded each of these factors in any given analysis depends on the circumstances of the case at hand. *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 374-75 (1990). Defendant, however, contends that Illinois law requires that we find that a "direct relationship" existed between the parties, separate and apart from these four factors.

¶ 19   Generally, individuals (and businesses) do not owe an affirmative duty to protect or rescue a stranger. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 232 (1996). However, this court has long recognized that "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Widlowski*, 138 Ill. 2d at 373 (collecting cases); see also *Forsythe*, 224 Ill. 2d at 291-92 (collecting cases); *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 622 (1955). Thus, if a course of action *creates* a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others from such injury. This does not establish a "duty to the world at large," but rather this duty is limited by the considerations discussed above. An independent "direct relationship" between parties may help to establish the foreseeability of the injury to that plaintiff (as either an individual or as a member of a class of individuals) but is not an additional requirement to establishing a duty in this context.

¶ 20   Even when one has not created the risk of harm, a duty to take affirmative action to aid another may arise where a legally recognized "special relationship" exists between the

parties. *Rhodes*, 172 Ill. 2d at 232. Such duties are, indeed, premised upon a relationship between the parties that is independent of the specific situation which gave rise to the harm. We have recognized four relationships that give rise to an affirmative duty to aid or protect another against an unreasonable risk of physical harm: "common carrier and passenger, innkeeper and guest, custodian and ward, and possessor of land who holds it open to the public and member of the public who enters in response to the possessor's invitation." *Marshall*, 222 Ill. 2d at 438. We have also recognized a duty to a third party to control the individual who is the source of the harm when a defendant has a special relationship with that person, such as a parent-child relationship (see *Norskog v. Pfiel*, 197 Ill. 2d 60, 84 (2001); Restatement (Second) of Torts § 316 (1965)) and a master-servant or employer-employee relationship (see *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 231 (2000); Restatement (Second) of Torts § 317 (1965)).

¶ 21 Thus, the duty analysis must begin with the threshold question of whether the defendant, by his act or omission, contributed to a risk of harm to this particular plaintiff. If so, we weigh the four factors to determine whether a duty ran from the defendant to the plaintiff: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. If the answer to this threshold question is "no," however, we address whether there were any recognized "special relationships" that establish a duty running from the defendant to the plaintiff.

¶ 22 In the case before us, plaintiff alleges that defendant "actively created the relevant risk of harm by using materials containing a known toxic substance in a way that caused that substance to escape and directly expose decedent to harm from inhaling the railroad's asbestos." Thus, plaintiff contends that there is a duty of care that is established under the first model of duty—a duty to guard against reasonably probable and foreseeable injuries that naturally flow from defendant's use of asbestos. Thus, we must turn to the four factors laid out above. The controlling question then becomes whether plaintiff sufficiently alleged facts that, if proven, would establish a duty of care owed by defendant to Annette Simpkins.

¶ 23                                   Foreseeability

¶ 24 The first factor we look to in determining whether a duty of care existed in this situation is whether the risk of harm to the plaintiff was reasonably foreseeable. *Widlowski*, 138 Ill. 2d at 373. Though foreseeability is not the only factor we consider, it is a necessary factor to finding a duty. If the injury was not reasonably foreseeable, no duty can exist.

¶ 25 It can be said, with the benefit of hindsight, that everything is foreseeable. *Widlowski*, 138 Ill. 2d at 374; *Lance v. Senior*, 36 Ill. 2d 516, 518 (1967). We must focus, therefore, on the question of whether the injury was reasonably foreseeable at the time defendant engaged in the allegedly negligent action. See, *e.g.*, *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 974 (1997). Plaintiff alleges that her exposure to and inhalation, ingestion and/or absorption of the asbestos fibers on her husband's work clothing was foreseeable and could or should have been anticipated by defendant. She further alleges that defendant knew or should have known that such exposure to asbestos fibers posed an unreasonable risk of harm to her and others

similarly situated. In a situation such as this, what is considered *reasonably* foreseeable depends on what information about the nature of asbestos was known at the time of plaintiff's alleged exposure and, therefore, what information defendant could reasonably be held accountable for knowing. Thus, though duty is always a question of law, in this case the attendant foreseeability question turns on specific facts regarding what defendant actually knew about the nature and potential harms from asbestos from 1958 to 1964 or what defendant should have known at that time.

¶ 26    In reviewing dismissal on a section 2-615 motion, we review *de novo* the sufficiency of the complaint. *Marshall*, 222 Ill. 2d at 429. We accept as true all well-pled facts and all reasonable inferences that may be drawn from those facts and construe the allegations in the complaint in the light most favorable to the plaintiff. *Id.* However, Illinois is a fact-pleading jurisdiction. *Id.*; see also, *e.g.*, *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004). While this does not require the plaintiff to set forth evidence in the complaint, it does demand that the plaintiff allege facts sufficient to bring a claim within a legally recognized cause of action. *Marshall*, 222 Ill. 2d at 429-30. A plaintiff may not rely on conclusions of law or fact unsupported by specific factual allegations. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). Defendant has argued that plaintiff's complaint is insufficient because it relies on the "conclusory allegation" that defendant "knew or should have known" of the dangers of secondhand asbestos exposure.

¶ 27    Defendant is correct. Plaintiff has failed to allege facts specific enough to analyze whether, if those facts were proven true, defendant would have been able to reasonably foresee plaintiff's injury. However, defendant has made this argument for the first time in its briefs to this court. In the circuit court, defendant relied on its argument that, as a matter of law, there is no duty owed by an employer to a third-party nonemployee who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace. While defendant, as appellee in the appellate court, "may raise a ground in this court which was not presented to the appellate court in order to sustain the judgment of the trial court, as long as there is a factual basis for it" (*Dillon v. Evanston Hospital*, 199 Ill. 2d 438, 491 (2002)), plaintiff correctly notes that, had defendant questioned the sufficiency of the allegations in a timely manner at the circuit court level, plaintiff could have requested an opportunity to replead in greater detail.

¶ 28    Because foreseeability is such an integral factor to the existence of duty and because the weight to be accorded to that foreseeability (as well as to the other factors) depends on the particular circumstances of the case, without more detailed pleadings we cannot determine whether, if all well-pled facts are taken as true, a duty of care ran from defendant to plaintiff in this case. We agree with defendant that the complaint is insufficient in that it alleges a conclusion as a basic element of duty. However, because defendant failed to raise this issue in the circuit court and raised it for the first time before this court, plaintiff did not have a chance to address the problem. Accordingly, the proper remedy is to remand the cause to the circuit court to allow leave to amend the complaint.

¶ 29                                                    CONCLUSION

¶ 30        For the reasons expressed above, we hold that the allegations in plaintiff's complaint are, in part, conclusory and therefore insufficient to establish that defendant owed a duty of care to Annette Simpkins. Because, in this case, the duty analysis rests on the finding of specific facts relating to defendant's knowledge of the potential harms of asbestos, the court cannot assess the existence of a duty without further facts in the complaint. We note that the appellate court reversed the circuit court's judgment and remanded for further proceedings based on its view that the facts alleged in plaintiff's complaint *were* sufficient to establish a duty of care owed by defendant. Although we disagree with this holding, we do agree with the appellate court's reversal of the circuit court's judgment, which dismissed the complaint with prejudice. Thus, although we affirm the appellate court's judgment, we do so on different grounds. Accordingly, we affirm the judgment of the appellate court but remand the cause to the circuit court with directions that plaintiff be allowed to file an amended complaint as discussed herein.

¶ 31        Appellate court judgment affirmed.

¶ 32        Cause remanded with directions.

¶ 33        JUSTICE FREEMAN, dissenting:

¶ 34        In remanding this cause to allow for amending the complaint, the court does not answer the substantive question of whether a legal duty exists at all for secondhand asbestos exposure, ostensibly the reason we granted leave to appeal.[3] It is, of course, appropriate to order such a remand when a plaintiff can, but has not yet, stated a cause of action for which relief may be granted. See *Simmons v. Homatas*, 236 Ill. 2d 459, 488 (2010) (Freeman, J., concurring in part and dissenting in part, joined by Burke, J.). Remand, however, is inappropriate here. The facts as already alleged put the issue of liability for secondhand asbestos exposure squarely before the court for determination. For that reason, I respectfully dissent.

¶ 35        Whether a duty exists in Illinois depends on whether the parties stood "in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436 (2006). As the court correctly notes, whether a relationship exists justifying the imposition of a duty depends on four factors: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Id.* at 436-37.

¶ 36        With respect to the reasonable foreseeability of the injury, plaintiff alleges that defendant

_____

[3]Not to mention that there is currently a split in the appellate court on this issue. Contrary to the Fifth District's holding in this case, the Fourth District has held that defendants owe a plaintiff no duty in household or "take-home" asbestos exposure case. *In re Estate of Holmes*, 2011 IL App (4th) 100462.

knew or should have known that asbestos fibers had a toxic effect upon the health of persons inhaling, ingesting, or otherwise absorbing them. Her complaint further states that both her father and her former husband worked in places at which they were exposed to asbestos: "Plaintiff's family members would carry this asbestos dust on his person and clothing home with him where it would become airborne again. The Plaintiff would be repeatedly exposed to this asbestos from her family member's person and clothing." Plaintiff further alleges that her exposure was "completely foreseeable and could or should have been anticipated by the Defendants." The complaint states that plaintiff's father worked at Commonwealth Steel from 1931 to 1954 and that plaintiff's former spouse worked at various locations throughout the state from 1951 until 1965.[4] It is difficult to understand what more facts need be alleged here, particularly because it is generally accepted that the first medical studies of bystander exposure were not published until 1965. Based on this, courts have concluded that foreseeability could not be established as a matter of law. See, *e.g.*, *Martin v. Cincinnati Gas & Electric Co.*, 561 F.3d 439, 445 (6th Cir. 2009); *In re Certified Question From the Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206, 218 (Mich. 2007).[5] I agree. In light of this, there is nothing that plaintiff could allege with respect to her father's employment (from 1931 until 1954) or even her former husband's employment from 1951 until 1964 or 1965 that would assist the court further in assessing the "foreseeability of the harm" prong to the duty question. In short, remanding this case for further opportunity to amend would accomplish little to aid in answering the question whether defendant owed plaintiff any duty at all.

¶ 37    In addition, we have repeatedly stressed that the existence of a duty turns, not only on foreseeability alone, but in large part on public policy considerations. *Marshall*, 222 Ill. 2d at 436; *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303 (2000). This court is not alone in balancing considerations of public policy when considering whether to impose a duty. As one court has aptly noted,

> "The threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff? Courts traditionally fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability. [Citations.] Thus, in determining whether a duty exists, courts must be mindful of the precedential, and consequential, future effects of their rulings, and limit the legal consequences of wrongs to a controllable degree." (Internal quotation marks omitted.) *Hamilton v.*

---

[4]In plaintiff's brief, the dates are more specific. Plaintiff's husband worked at the railroad from "1958 to 1964." The brief also states that the marriage ended in 1965.

[5]I acknowledge that I am considering, as a matter of judicial notice, court opinions on the general recognition of when secondhand asbestos reports were published. However, this court has approved of this practice. See *In re Commitment of Simons*, 213 Ill. 2d 523, 530-31 (2004) (citing *People v. Miller*, 173 Ill. 2d 167, 206-07 (1996) (McMorrow, J., specially concurring)).

*Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001).

The issue of whether a duty is owed under these circumstances has been addressed by a number of courts throughout the United States, with a majority of jurisdictions holding that no duty exists. *Riedel v. ICI Americas Inc.*, 968 A.2d 17 (Del. 2009); *CSX Transportation, Inc. v. Williams*, 608 S.E.2d 208 (Ga. 2005); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58 (Md. 1998); *In re Certified Question From the Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206 (Mich. 2007); *In re New York City Asbestos Litigation*, 840 N.E.2d 115 (N.Y. 2005); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. App. 2007). I find the decisions from the high courts of both New York and Michigan to be especially persuasive.

¶ 38    In declining to find a duty in a "take-home asbestos" case, the Supreme Court of Michigan focused on the competing matters of policy. The court noted the United States Supreme Court's recognition that the country has experienced an " 'asbestos-litigation crisis" which resulted from what the Court characterized as an " 'elephantine mass of asbestos cases' lodged in state and federal courts.' " *In re Certified Question*, 740 N.W.2d at 219 (quoting *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 166 (2003)). Not only did the Michigan court find that the burden of imposing liability would be "extraordinarily onerous and unworkable," it also noted that the consequences, which it perceived was one of "limitless liability," were not only "unclear," but "may well be disastrous." *Id.* at 219. The court in particular noted the difficulty in limiting the potential pool of people at risk from secondhand exposure, noting that liability can reach to "extended family members, renters, house guests, carpool members, bus drivers, and workers at commercial enterprises visited by the worker when he or she was wearing dirty work clothes." *Id*. at 219.

¶ 39    The Michigan Supreme Court's fear of limitless liability echoes similar concerns raised by the Court of Appeals of New York:

> "In sum, plaintiffs are, in effect, asking us to upset our long-settled common-law notions of an employer's and landowner's duties. Plaintiffs assure us that this will not lead to 'limitless liability' because the new duty may be confined to members of the household of the employer's employee ***. This line is not so easy to draw, however. For example, an employer would certainly owe the new duty to an employee's spouse (assuming the spouse lives with the employee), but probably would not owe the duty to a babysitter who takes care of children in the employee's home five days a week. But the spouse may not have more exposure than the babysitter to whatever hazardous substances the employee may have introduced into the home from the workplace. Perhaps, for example, the babysitter (or maybe an employee of a neighborhood laundry) launders the family members' clothes. ***
>
> *** While logic might suggest (and plaintiffs maintain) that the incidence of asbestos-related disease allegedly caused by the kind of secondhand exposure at issue in this case is rather low, experience counsels that the number of new plaintiffs' claims would not necessarily reflect that reality." *In re New York City Asbestos Litigation*, 840 N.E.2d 115, 122 (N.Y. 2005).

¶ 40    I believe these cases are well reasoned. I therefore would hold that no duty exists in this case as a matter of law and that the circuit court correctly granted defendant's motion to

dismiss.

¶ 41    JUSTICE BURKE joins in this dissent.