2026 IL App (1st) 240874-U

No. 1-24-0874

Filed June 10, 2026

Third Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOSEPH TAYLOR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE CHICAGO HOUSING AUTHORITY, | ) | |
| AGB INVESTIGATIVE SERVICES, INC. d/b/a | ) | No. 20 L 245 |
| AGB INVESTIGATIVE SERVICES and d/b/a | ) | |
| AGB INNOVATIVE SECURITY SOLUTIONS, | ) | |
| and CARL MCLAURIN, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | Honorable |
| (The Chicago Housing Authority, Defendant- | ) | Toya T. Harvey, |
| Appellant.) | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1  *Held*: In this negligence action, defendant was entitled to judgment notwithstanding the verdict when, as a matter of law, defendant did not owe plaintiff a duty.

¶ 2  A jury found the Chicago Housing Authority (CHA) liable to Joseph Taylor and awarded

him $7 million. Following the verdict, CHA filed a motion requesting, *inter alia*, that the court

enter judgment in its favor notwithstanding the verdict (judgment *n.o.v.*).[1] The court denied CHA's

motion and entered judgment in accordance with the jury's verdict. CHA appeals. We reverse and

vacate the judgment upon our finding that CHA is entitled to judgment notwithstanding the verdict.

¶ 3                                  I. BACKGROUND

¶ 4          Security guards Carl McLaurin and Trivell Pruitt, both employees of AGB Investigative

Services, Inc. (AGB), were patrolling CHA properties by vehicle on the afternoon of January 4,

2019. While en route to a CHA property located at East 45th Street and South Wabash Avenue

(45th and Wabash), they came to a stop at the intersection of West 43rd Street and South Wentworth

Avenue (43rd and Wentworth). There, they observed multiple individuals fire gunshots from a Kia

automobile. The Kia then drove onto the Dan Ryan Expressway. McLaurin and Pruitt followed the

Kia and continued to pursue it as it exited onto West 47th Street and travelled south on Wentworth.

Eventually, the Kia came to a stop after crashing into two vehicles near the intersection of West

Garfield Boulevard and South Wells Street.[2] The Kia's five occupants exited and ran in different

directions. One occupant pointed a handgun at a woman seated in her vehicle. McLaurin exited

his vehicle and produced his semiautomatic handgun. He pointed it at the individual and ordered

him to drop his weapon. The man ran toward a nearby alley, turned, and pointed his weapon at

McLaurin. McLaurin fired twice in the man's direction. One of the bullets struck the plaintiff,

Joseph Taylor, who was sitting in his vehicle at a nearby Wendy's restaurant.

¶ 5          Taylor was struck in the head near his ear. He managed to get help and was transported by

ambulance to a University of Chicago hospital. While there, it was determined that the bullet

---

[1]We use these terms interchangeably. The Latin phrase *non obstante veredicto* translates to "with the verdict not standing in the way." Russ Versteeg, *Essential Latin for Lawyers* 148 (Carolina Academic Press 1990).

[2]McLaurin testified the location was "55th Street and Wells." This portion of 55th Street is known as West Garfield Boulevard.

fragment should not be removed, as it was lodged near a nerve and removal would risk greater injury. Taylor was discharged later that day and prescribed pain medication. The bullet fragment remains lodged in his skull. Taylor has had pain ever since the incident.

¶ 6     Taylor brought this suit, naming CHA, AGB, and McLaurin as defendants, alleging negligence against each. McLaurin was employed by AGB, and CHA contracted with AGB for security services. The operative second amended complaint alleged that each defendant had a duty to exercise ordinary and reasonable care (1) in the hiring, supervision, training and dispatching of its security agents and employees, (2) in carrying out its armed security activities, and (3) while carrying out their voluntary undertakings. CHA's answer denied that it owed these duties. Taylor settled his claims with AGB and McLaurin and proceeded to trial against CHA.

¶ 7     At the time of the events culminating in Taylor's shooting, McLaurin was conducting a roving patrol. Roving patrols were described in the CHA-AGB contract's scope of services as patrol on foot or by vehicle of CHA properties to "ward off any suspicious and/or malicious activity." The contract required guards to "have the ability to respond to life threatening situations, subdue violent or potentially violent or disturbed individuals" and "employ good judgment when dealing with the public and must maintain self-control."[3] The contract also set forth minimum requirements for guards. These included that guards "have excellent prior experience and a minimum of three (3) years of providing security service."

¶ 8     AGB hired McLaurin in 2017. Before then, he worked as a customer service representative for Walgreens and in maintenance at McCormick Place. He had never worked as a security guard

---

[3]A copy of the CHA-AGB contract appears in the record as an exhibit attached to Taylor's response to CHA's posttrial motion. But at trial, Taylor only submitted portions of the CHA-AGB contract, which were admitted into evidence. Since a motion for judgment *n.o.v.* pertains only to trial evidence, our consideration will be limited to the admitted portions. The admitted exhibits were not impounded and made part of the record on appeal. Nonetheless, we can discern from testimony the admitted portions of the contract.

before his employment with AGB. He did, however, possess the necessary state licenses to be an armed security guard: a Permanent Employee Registration Card (PERC) and a Firearm Owner Identification (FOID) card. McLaurin's immediate supervisor was also an AGB employee. His supervisor's superiors were AGB employees as well. AGB suspended McLaurin for ten days in October 2018 for violating an AGB policy. He denied his suspension resulted from his pursuit of a fleeing suspect. Instead, he explained, the suspension resulted from an altercation at his home with a Calumet Park police officer. Nonetheless, McLaurin admitted pursuit of fleeing suspects was included in an AGB discipline report listing company policies he had violated.[4] No details about the incident were elicited, including when it occurred.

¶ 9        The CHA contract further required AGB, on a continuing basis, to update a security audit file, which contained, *inter alia*, information on each guard's credentials. Before the shooting, AGB updated the audit file with information on McLaurin, which reported the dates he was hired and the dates he obtained his licenses. From those dates, it could be deduced that he lacked three years of prior experience as a security guard.

¶ 10       Leonard Langston, CHA's Deputy Chief of Property and Asset Management, testified that employing a guard who lacked three years' prior experience violated a provision of the CHA-AGB contract. But CHA was primarily concerned that AGB security guards possess the required state licenses. CHA did not manage the hiring of security guards or ensure whether guards possessed required licenses or met other requirements. Rather, AGB performed all human resource functions. When asked whether CHA manages AGB, Langston answered that CHA "manages the contract."

---

[4]This report is absent from the record before us. It is unclear whether the report indicated that McLaurin pursued a fleeing suspect in October 2018, if the report referred to this incident, or some other incident. Neither the record nor briefs clarify the matter.

¶ 11        Langston also testified the nearest CHA property to 43rd and Wentworth—the location where McLaurin observed shooting from the Kia—is a senior building located at West 43rd Street and South Princeton Avenue, two blocks away. Senior properties are not patrolled by armed security guards.

¶ 12        Taylor submitted a jury instruction in accordance with Illinois Pattern Jury Instructions, Civil, No. 20.01 (revised Aug. 2023) (hereinafter IPI Civil No. 20.01), regarding the issues in the case. The instruction informed the jury that Taylor alleged CHA was negligent in one or more of the following respects:

> "[1] CHA failed to enforce its own minimum requirement for security guards to have excellent prior experience.
>
> [2] CHA failed to enforce its own minimum requirements for security guards to have a minimum of three years of providing security service.
>
> [3] CHA failed to recently review its security audit file to verify that Carl McLaurin met the CHA minimum requirements to work as a security guard for CHA properties.
>
> [4] CHA failed to confirm that AGB Investigative Services provided it with all security guard credentials, as required under the contract between AGB and the CHA.
>
> And [5] CHA failed to manage AGB while AGB provided security services for CHA properties."

The jury was further instructed that if it determined more probably than not that CHA acted or failed to act in one of those ways, the jury was to find CHA negligent.

¶ 13        CHA objected to Taylor's proposed IPI Civil No. 20.01, contending that the instruction premised liability on "internal policies that can't form a duty." CHA submitted an alternate IPI Civil No. 20.01 instruction that stated the issue was whether CHA "failed to adequately train and

supervise its agents and employees." Over CHA's objection, the trial court gave Taylor's proposed instruction.

¶ 14     The jury returned a verdict in favor of Taylor and assessed damages in the amount of $7 million. CHA filed a posttrial motion, arguing the court incorrectly instructed the jury that it could base CHA's negligence on failing to enforce its own standards for security guards. Citing case law, CHA contended internal standards do not establish a duty of care and negligence cannot be premised on the failure to enforce such standards. For relief, CHA requested the court to either enter judgment in its favor notwithstanding the verdict or grant a new trial. CHA also argued the damages were excessive and requested a remittitur.

¶ 15     After briefing and argument, the trial court denied CHA's posttrial motion. In an oral ruling, the court reasoned that caselaw permitted the consideration of internal standards to determine whether a defendant fulfilled its duty of ordinary care. The court further explained that by agreeing to the jury instruction stating CHA owed Taylor a duty of ordinary care, CHA had waived any argument that it did not owe him a duty. This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17     CHA argues it was entitled to judgment notwithstanding the verdict, as it did not owe Taylor a duty of care under the circumstances.

¶ 18     Before reaching the merits, we address Taylor's contentions that this issue is barred. First, Taylor argues CHA either waived or forfeited its duty arguments by failing to raise them in a pretrial motion and by agreeing to a jury instruction stating that CHA owed him a duty of ordinary care. See Illinois Pattern Jury Instructions, Civil, No. 10.04 (approved Dec. 8, 2011) (hereinafter IPI Civil No. 10.04) ("It was the duty of the defendant, before and at the time of the occurrence, to use ordinary care for the safety of the plaintiff. That means it was the duty of the defendant to

be free from negligence."). Thus, Taylor asserts, CHA took a position at trial inconsistent with its arguments on appeal, thereby waiving the issues. See *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543 (1984) ("It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.").

¶ 19     We disagree that CHA's arguments are inconsistent with the position it took at trial. IPI Civil No. 10.04 encompasses the general principle that "all persons owe a duty to all others to use ordinary care to guard against injuries resulting from the reasonably foreseeable consequences of [their] acts." *Ono v. Chicago Park District*, 235 Ill. App. 3d 383, 389 (1992). But the instruction "does not inform the jury whether and under what circumstances a defendant owes a duty to protect plaintiff against [conduct] by a third person." *Id*. Thus, IPI Civil No. 10.04 is compatible and may be given with additional instructions stating the law applicable to the circumstances. *Id*. To be sure, a defendant's agreement to IPI Civil No. 10.04 does not allow a plaintiff to recover on theories of negligence contrary to law nor does it amount to a waiver or forfeiture of any applicable defenses.

¶ 20     In its answer, CHA denied that it owed Taylor the specific duties to exercise ordinary and reasonable care his complaint alleged. CHA objected to Taylor's IPI Civil No. 20.01 instruction, arguing it erroneously informed the jury that it could find CHA negligent for failure to enforce its internal standards. CHA also submitted its own IPI Civil No. 20.01 instruction that would permit recovery only upon proof of its failure "to adequately train and supervise its agents and employees." Thus, CHA argued its duty was limited to specific circumstances. This is consistent with the position taken in CHA's motion for judgment *n.o.v*. and its arguments on appeal. Accordingly, CHA did not waive or forfeit its arguments by agreeing that the jury be instructed with IPI Civil No. 10.04.

¶ 21    Separately, Taylor argues CHA's claim is barred by the doctrine of aider by verdict. Under the aider by verdict doctrine:

> "where a defendant allows an action to proceed to verdict, that verdict will cure not only all formal and purely technical defects and clerical errors in a complaint, but will also cure any defect in failing to allege or in alleging defectively or imperfectly any substantial facts which are essential to a right of action." (Internal quotation marks omitted.) *People ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2017 IL App (1st) 152668, ¶ 91.

Consequently, aider by verdict bars a defendant from challenging the sufficiency of the plaintiff's complaint for the first time following a verdict, so long as the complaint asserted a recognized cause of action. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). Here, however, CHA's motion for judgment *n.o.v.* and appeal do not challenge the sufficiency of Taylor's complaint. Rather, CHA challenges whether Taylor proved sufficient facts at trial to establish CHA's liability. Accordingly, the doctrine of aider by verdict is not implicated.

¶ 22    In addition, Taylor contends CHA's claim is forfeited, since its arguments regarding a limited duty and a lack of retained control were not included in its posttrial motion. Although those exact arguments were not mentioned in CHA's posttrial motion, they pertain to the same issue raised in the motion—whether CHA owed Taylor a duty. On appeal, a party is not limited to the exact same arguments that were made below. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Accordingly, we do not find that CHA waived or forfeited these arguments.

¶ 23    We now turn to the merits. Judgment notwithstanding the verdict, or judgment *n.o.v.*, should be granted only "when the evidence and inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Ries v. City of Chicago*, 242 Ill. 2d 205, 215 (2011). A

judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). Indeed, a court has no right to enter judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Id*. at 454. Our review of a trial court's denial of a motion requesting judgment *n.o.v.* is *de novo*. *Cornejo v. Dakota Lines, Inc.*, 2023 IL App (1st) 220633, ¶ 24.

¶ 24        In a negligence action, judgment *n.o.v.* is appropriate if the plaintiff fails to prove an essential element. *Walton v. Dirkes*, 388 Ill. App. 3d 58, 60 (2009). The essential elements of negligence are the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. The existence of a duty is a question of law. *McNerney v. Allamuradov*, 2017 IL App (1st) 153515, ¶ 61. In other words, whether a defendant owed a plaintiff a duty is for the court to determine, not a question of fact for a jury to decide. *Choate v. Indiana Harbor Belt R.R.*, 2012 IL 112948, ¶ 45.

¶ 25        We note that Taylor did not seek to hold CHA vicariously liable for McLaurin's conduct. Indeed, "one who employs an independent contractor is not liable for harm caused by the latter's acts or omissions." *Carney v. Union Pacific R.R.*, 2016 IL 118984, ¶ 31; Restatement (Second) of Torts § 409 (1965). Rather, Taylor alleged CHA was liable based on its own conduct, which he claims created or contributed to his injury.

¶ 26        CHA argues that its contract with AGB, which required, *inter alia*, that security guards have "excellent prior experience and a minimum of three years of providing security service," was an internal policy and did not create a duty owed to Taylor. To be sure, "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines."

*Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 238 (1996). This court has likewise held that a duty is not created by internal policies reflected in a contract. *Schweihs v. Chase Home Finance LLC*, 2021 IL (1st) 191779, ¶ 40. "Self-imposed policies can exist coextensively with the law," but " 'it is the law which, in the end, must say what is legally required.' " *Doe v. Coe*, 2019 IL 123521, ¶ 36 (quoting *Rhodes*, 172 Ill. 2d at 238)).

¶ 27 Here, Taylor relied on evidence that CHA failed to enforce compliance with requirements of its contract with AGB; specifically, to ensure security guards had three years of prior experience. By itself, the contract did not create this duty. Taylor was neither a party to nor an intended beneficiary of the contract. Thus, any failure to ensure compliance was only relevant to a possible breach, not to the existence of a duty. Taylor agrees with these points but maintains the law established CHA's duty to him, since CHA's conduct created or contributed to the risk of the harm he suffered.

¶ 28 "[E]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." (Internal quotation marks omitted.) *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19.

"[I]f a course of action creates a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others from such injury." *Id*. "The existence of a duty under a particular set of circumstances is a question of law for the court to decide." *Choate*, 2012 IL 112948, ¶ 23 (citing *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996)). The question "is determined by reference to whether the parties stood in such a relationship to each other that the law imposes an obligation on one to act for the protection of the other." (Emphasis omitted.)

*Rhodes*, 172 Ill. 2d at 238. To find such a relationship, a court will consider (1) the foreseeability of the plaintiff's injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against it, and (4) the consequences of placing that burden on the defendant." *Simpkins*, 2012 IL 110662, ¶ 18.

¶ 29  As the jury was instructed, Taylor alleged CHA contributed to the risk of harm by: (1) failing to enforce its own minimum requirement for security guards to have excellent prior experience, (2) failing to enforce its own minimum requirements for security guards to have a minimum of three years of providing security service, (3) failing to recently review its security audit file to verify that Carl McLaurin met the CHA minimum requirements to work as a security guard for CHA properties, (4) failing to confirm that AGB had provided it with all security guard credentials, as required under the contract between AGB and the CHA, and (5) failing to manage AGB while AGB provided security services for CHA properties.

¶ 30  We observe that the five alleged omissions are closely related. Each one reflects a way CHA allegedly failed to prevent McLaurin from working as a roving patrol security guard because of his lack of three years of prior experience. Taylor contends his injury resulted from McLaurin's lack of three years of prior experience and, therefore, CHA's failure to prevent him from working as a security guard contributed to his injury.

¶ 31  We are unpersuaded that Taylor's injury was a reasonably foreseeable or likely consequence of any failure by CHA to prevent McLaurin from working as a roving patrol security guard. Nothing showed that McLaurin acted as he did *because* he lacked three years of prior experience. Nor was there evidence demonstrating that a security guard with three years of prior experience would not have acted as McLaurin did. Those propositions are not self-evident either.

¶ 32    Taylor presented no other basis to argue that McLaurin's was unqualified to work as a roving security guard apart from the CHA-AGB contract; specifically, the requirement that security guards have "excellent prior experience and a minimum of three years of providing security service." Yet, as noted, an internal policy reflected in a contract term cannot create a duty. For CHA to have owed Taylor a duty to prevent security guards with less than three years of experience from conducting roving patrols, he must show the law imposed such a duty, independently from the CHA-AGB contract. But Taylor failed to do so. McLaurin possessed the requisite state licenses to work as a security guard. No evidence was adduced to show that conducting roving patrols of CHA properties required greater qualifications than necessary for a security guard to work in any other setting. Ultimately, the connection between McLaurin's qualifications and Taylor's injury is purely conjectural.

¶ 33    To support his argument, Taylor relies on the Fifth District's opinion in *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245. In *Bruntjen*, the majority found that a pizza shop franchisor, Imo's, owed a duty of care to a vehicle passenger injured by a franchisee's delivery driver. *Id*. ¶ 54. The plaintiff was injured when the driver, travelling at excessive speed, swerved to avoid a stopped vehicle and crossed the center line, colliding head on with the plaintiff's vehicle. *Id*. ¶ 46. Imo's written policy required that drivers have fewer than three moving violations in the three preceding years. *Id*. ¶ 49. Despite Imo's right to monitor and enforce its policies, the driver who caused the accident had more than three moving violations and should not have been delivering pizzas. *Id*. Taylor analogizes *Bruntjen* with this case. That is, McLaurin should not have been working as a roving security guard based on the qualifications required under CHA's contract with AGB.

¶ 34    We find *Bruntjen* distinguishable. Although the majority noted that the driver's record should have disqualified him from delivering pizzas, Imo's failure to enforce its driver policy was

not the sole basis for the majority's finding that the plaintiff's injury was foreseeable. Rather, Imo's contributed to the risk of harm by:

"(a) establishing an unusually large delivery area for the Bethalto store; (b) requiring 'timely' delivery; (c) requiring [the franchisee] to have [the driver] sign a contract stating he could be terminated for failing to deliver pizzas expeditiously; and (d) creating a financial incentive to young drivers to drive at unsafe speeds." *Id*. ¶ 42.

Based on this conduct, it was foreseeable that "delivery drivers would sacrifice safety for speedy deliveries." *Id*. ¶ 50. In other words, Imo's conduct gave delivery driver's incentive to act negligently. Here, by contrast, Taylor points to no conduct on CHA's part that encouraged McLaurin to pursue fleeing suspects.

¶ 35     Even if we were to read *Bruntjen* as Taylor urges, we would not find that Taylor's injury was foreseeable from CHA's failure to enforce the three-year experience requirement. The facts in *Bruntjen* differ from this case. Imo's was in the business of pizza delivery. Thus, it expected its franchisees would hire drivers and it issued policies directed toward the safety risks inherent to that activity. A driver's history of frequent moving violations naturally indicates they are prone to unsafe driving and pose a risk of auto accidents. Thus, there was a strong nexus between the requirement that drivers have no more than three moving violations and the risk of injury. Moreover, the injury resulted from unsafe driving during a pizza delivery. So, the contractual requirement for drivers reflected Imo's effort to reduce the probability of the foreseeable injury that occurred.

¶ 36     Here, no comparable nexus exists between the three-year prior experience requirement for security guards and the injury that occurred. CHA hired AGB to provide security for the safety of its residents and others on the property it maintains. But no CHA resident or property were

involved in Taylor's injury or the events leading to it. The shooting from the Kia had no connection to a CHA resident or property. Thus, McLaurin's choice to pursue was outside the duties contemplated in the CHA-AGB contract. Instead of simply reporting the shooting and continuing to his destination at 45th and Wabash, he entered the Dan Ryan Expressway and followed the Kia for a considerable distance. This action was not done to further the security of CHA residents and property. Likewise, the location of the crash and Wendy's had no connection to CHA. There, McLaurin ultimately discharged his handgun after an individual from the Kia had pointed a handgun at a motorist, a bystander. Since these events are so remote from CHA's undertaking to provide security for its residents and property, Taylor's injury was not foreseeable.

¶ 37    Yet, even if we were to find Taylor's injury foreseeable, CHA would still be entitled to judgment *n.o.v.* CHA's liability for the harm caused by an independent contractor is limited by law to specific circumstances Taylor failed to establish. As we noted, "one who employs an independent contractor is not liable for harm caused by the latter's acts or omissions." *Carney*, 2016 IL 118984, ¶ 31. An exception to this rule must be shown to establish liability.

¶ 38    In *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204 (1979), our supreme court considered whether CHA could be held liable when its contractor's security guards failed to prevent a resident from fatally stabbing a guest at a CHA property. The court cited section 411 of the Restatement (Second) of Torts. *Id*. Section 411 states:

> "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." Restatement (Second) of Torts § 411 (1965).

The court found that by hiring the contractor to provide security guards, CHA could be liable for the negligent performance of its voluntary undertaking. *Pippin*, 78 Ill. 2d at 209. Its duty, however, was "limited by the extent of the undertaking, viz, to use reasonable care in engaging [the contractor] to provide the guard services." *Id*. at 210. Thus, CHA could be liable for no more than its negligence in hiring the contractor. *Id*.

¶ 39        In this case, CHA argues that *Pippin* is controlling and its liability could only be premised on negligence in hiring AGB. And since Taylor failed to show CHA was negligent in hiring AGB, CHA contends, he cannot recover.

¶ 40        Taylor argues *Pippin* is distinguishable, since CHA not only undertook to hire AGB to provide security services, but it retained supervisory control over AGB and was negligent in its supervision. Subsequent to its decision in *Pippin*, our supreme court recognized section 414 of the Restatement (Second) of Torts—the retained control exception—as an expression of Illinois common law. *Carney*, 2016 IL 118984, ¶¶ 34-35. Section 414 states:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

Thus, to prevail under this exception, Taylor was required to prove that CHA retained control over AGB's work and failed to control it with reasonable care.

¶ 41        Whether a defendant retained control may be decided as a matter of law where the evidence is insufficient to create a factual question. *Carney*, 2016 IL 118984, ¶ 41. The inquiry is whether the hiring entity retained control over the details and methods of the independent contractor's work. *Id*. ¶ 32 (explaining that the party with control over the details and methods of the work is

the proper party to be charged with responsibility). A general right to enforce safety, however, does not amount to retained control. *Id*. ¶ 47. As to whether control is retained, comment *c* to section 414 is instructive:

> "In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c, at 388 (1965).

To determine whether a defendant retained control, we may consider the written agreement between the defendant and the contractor and the defendant's conduct. *Carney*, 2016 IL 118894, ¶ 41.

¶ 42     Taylor argues Langston admitted CHA retained control over AGB by stating that CHA "manages" the AGB contract. But Langston's statement, taken alone, is insufficient to prove control.

¶ 43     The entirety of Langston's testimony and other evidence adduced at trial, evince that CHA did not retain control over the security services AGB provided. AGB was solely responsible for ensuring the qualifications of the security guards they hired. This included required training and state licensure. McLaurin's direct supervisor and his superiors were all AGB employees. The policies governing how security guards were to perform their jobs was the AGB employee

handbook. McLaurin was driving an AGB vehicle. He used an AGB issued radio to communicate with an AGB dispatcher during his pursuit of the Kia. The incident report completed afterward was generated according to AGB's procedures and maintained by AGB. AGB, without CHA's involvement, suspended McLaurin for a previous incident. AGB's duty to maintain an audit file and CHA's right to inspect it are the general rights described in comment *c* of section 414 of the Restatement (Second) of Torts, not control of the method of work or operative details of the work performed by security guards. In sum, the trial evidence established that AGB, not CHA, controlled the manner of its work. Since Taylor failed to prove that CHA was negligent in hiring AGB or retained control over AGB, CHA cannot be liable to him for the harm caused by McLaurin.

¶ 44 Finally, at oral argument, Taylor's counsel argued that CHA's duty was established by its failure to raise the issue until filing its posttrial motion and its agreement to IPI Civil 10.04. These arguments echo Taylor's forfeiture arguments. We reject these arguments for similar reasons. We are aware of no authority, nor does Taylor cite any, supporting that the failure to assert that a defendant owed no duty to the plaintiff in a pretrial motion or motion for directed verdict results in forfeiture of the issue.

¶ 45 As to IPI Civil 10.04, the instruction reflects the general principle that "all persons owe a duty to all others to use ordinary care to guard against injuries resulting from the reasonably foreseeable consequences of [their] acts." *Ono*, 235 Ill. App. 3d at 389. By its terms, the principle applies to any defendant for any plaintiff. But, as in any case, the plaintiff must prove their injury was a reasonably foreseeable consequence of the specific act alleged. If not, the plaintiff fails to prove the defendant's duty of care extended to refrain from that act. Accordingly, the issue here was more specific: whether the duty of care CHA owed Taylor extended to require that CHA ensure

AGB security guards have three years of prior experience. Since Taylor's injury was not a reasonably foreseeable consequence of failing to do so, CHA's duty of care did not extend that far.

¶ 46    For these reasons, we find that the evidence, together with reasonable inferences drawn therefrom, does not demonstrate a substantial factual dispute, and the assessment of witness credibility or the determination regarding conflicting evidence is not decisive to the outcome. Rather, all the evidence, viewed in the light most favorable to plaintiff, overwhelmingly favors the conclusion that CHA did not owe Taylor a duty of care under the circumstances. Our supreme court has held "[w]here a plaintiff has obtained recovery against a defendant based on negligence, and if the defendant did not owe the plaintiff a duty, then a judgment *n.o.v.* in favor of the defendant is required." *Choate*, 2012 IL 112948, ¶ 22 (citing *Washington v. City of Chicago*, 188 Ill. 2d 235, 238-39 (1999)). We are required here to find that the circuit court erred in denying CHA judgment *n.o.v.*

¶ 47                                III. CONCLUSION

¶ 48    Based on the foregoing, we reverse the judgment of the circuit court.

¶ 49    Reversed.